## MARSHALL v. HOLMES.

**ERROR TO THE COURT OF APPEALS FOR THE SECOND CIRCUIT OF THE STATE OF LOUISIANA.**

No. 28. Argued April 6, 7, 1891 — Decided November 9, 1891.

Numerous judgments at law were rendered in the state court in favor of the same party, against the same defendant; in each case, the judgment was for less than five hundred dollars, but the aggregate of all the judgments was over three thousand dollars. After the close of the term, the defendant against whom the judgments were rendered, filed a petition in the same court for the annulment of the judgments upon the ground that, without negligence, laches or other fault upon the part of the petitioner, they had been fraudulently obtained. Subsequently the petitioner filed a proper petition and bond for the removal of the case into the Circuit Court of the United States. The application was refused and the state court proceeded to final judgment. *Held,*

(1) Upon the filing of a proper petition and bond for the removal of a cause pending in a state court, such cause, if removable under the act of Congress, is, in law, removed so as to be docketed in the Circuit Court of the United States, notwithstanding the state court may refuse to recognize the right of removal;

(2) As all the judgments in law were held in the same right and against the same parties, and as their validity depended upon the same facts, the defendant therein, in order to avoid a multiplicity of actions, and the vexation and costs arising from numerous executions and levies, was entitled to bring one suit for a final decree determining the matter in dispute that was common to all the parties; and as, under the rules of equity, such a suit could be brought in a court of the United States, the aggregate amount of all the

judgments sought to be annulled was the value of the matter in dispute; consequently, the cause was removable so far as the amount involved was concerned;

(3) A Circuit Court of the United States in the exercise of its equity powers, and where diverse citizenship gives jurisdiction over the parties, may deprive a party of the benefit of a judgment fraudulently obtained by him in a state court, if the circumstances are such as would authorize relief by a Federal court if the judgment had been rendered by it and not by a state court, as a decree to that effect does not operate upon the state court, but upon the party.

(4) Where a suit in equity is, in its general nature, one of which a Circuit Court of the United States may rightfully take cognizance, upon removal, it is not for a state court to disregard the right of removal upon the ground simply that the averments of the petition or bill in equity are insufficient or too vague to justify a court of equity in granting the relief asked. It is for the Federal court, after the cause is docketed there, and upon final hearing, to determine whether, under the allegations and proof, a case is made which entitles the plaintiff to the relief asked.

*Barrow* v. *Hunton*, 99 U. S. 80; *Johnson* v. *Waters*, 111 U. S. 640; and *Arrowsmith* v. *Gleason*, 129 U. S. 86, distinguished from *Nougue* v. *Clapp*, 101 U. S. 551, and *Graham* v. *Boston, Hartford & Erie Railroad*, 118 U. S. 161.

THE court stated the case as follows:

On the 20th day of April, 1885, the plaintiff in error, Mrs. Sarah E. Marshall, a citizen of New York, filed in the Eighth District Court for the Parish of Madison, Louisiana, a petition for injunction, representing that David Mayer, one of the defendants in error, had then recently obtained, in a suit in that court, a judgment against her for the sum of $127.50; that in pursuance of an agreement that judgment in one suit should be decisive of other suits, in the same court, between the same parties and relating to the same subject matter, judgments had been entered against her, in his favor, in other actions, twenty-three in number, for sums aggregating $3089.31. Each judgment was for less than $500.

The petition alleges that all the judgments were obtained on false testimony and forged documents, and that equity and good conscience required that they be annulled and avoided for the following reasons:

" That your petitioner, as usufructuary of the plantation Cabin Teele, in your said parish, employed one Elijah Boyd as an agent on the said plantation to collect the rents and ship the cotton received ; that the said Boyd died in the year 1884, and that said Mayer, pretending to have a contract with said Boyd, by which your petitioner was bound to him as a furnisher of supplies *in solido* with the several defendants named in the suits hereinbefore mentioned, brought said suits and made petitioner a party defendant thereto ; that petitioner answered in the several suits that said Boyd, if he made any such contract as alleged, had no power, right or authority to do so ; that a trial was had of the suit No. 607, and the said Mayer introduced evidence of the existence of a letter from your petitioner to the said Boyd authorizing him, the said Boyd, to make a contract by which her lien as lessor on the crops produced by the several defendants and other tenants on said plantation should be waived in favor of the said Mayer or of others as furnishers of supplies to said tenants ; that upon such evidence so offered, and of the existence of which petitioner could not possibly be aware and of which she had no knowledge until subsequent to the trial, judgment was rendered against her in said suit and in the several other suits mentioned. Your petitioner shows that the said Boyd, who was an agent, with only a general power of administration, had no authority to bind her or to waive her lien as lessor in order to procure supplies for the several defendants and other tenants, and that the pretended letter authorizing him to make such contract, if it ever had an existence, which petitioner denies, was a false and forged document, not written and not signed by her ; that your petitioner has never authorized the said Boyd or any other person whatsoever to waive her lien as lessor in favor of the said Mayer or any other furnisher of supplies and has never written the pretended letter or any other letter to the said Boyd or to any other person whatsoever containing such authority ; that, to the contrary, as soon as she was informed after the death of said Boyd that he had made such pretended contract and other contracts by which it was sought to bind her, she instructed

her agents and attorneys to take immediate steps to disavow the authority of said Boyd to make such contracts; that the testimony of said Mayer as to the existence of said pretended letter is false and in pursuance of a conspiracy to defraud petitioner, or that said pretended letter, if it ever had an existence, is a false and forged document; that this testimony and much more testimony necessary to establish the falsity of said evidence upon which said judgments were obtained and the forgery of said pretended letter to said Boyd was unknown to petitioner at the time of the trial and could not have been known to or anticipated by her, and has been discovered by her since the rendition of said judgments in said suit and since the lapse of the legal delays within which a motion could be made for a new trial, and that there has been no laches on her part in failing to show the falsity of such evidence and the forgery of such pretended letter on the trial of the cause."

Such was the case made in the petition. The relief asked was an injunction against Mayer and the defendant in error, Holmes, sheriff of the parish, restraining them from executing the above judgments or any of them; that Mayer be cited to answer the petitioner's demand; that the judgments be annulled and avoided as obtained upon false testimony and forged documents; and that the petitioner have general and equitable relief.

A writ of injunction was issued as prayed for; and upon a supplemental petition, showing Mayer to be a non-resident of Louisiana, a *curator ad hoc* was appointed to represent him.

Mayer appeared and filed exceptions and pleas of estoppel and *res adjudicata*.

Subsequently, June 5, 1885, Mrs. Marshall filed a petition, accompanied by a proper bond, for the removal of her suit into the Circuit Court of the United States, upon the grounds that she was a citizen of New York, and the defendants respectively were citizens of Mississippi and Louisiana; that the controversy was wholly between citizens of different States; and that it could be fully tried and determined between them. The court made an order refusing the application for removal. The pleas were referred to the merits, and ordered to stand as

an answer. Mayer answered, reiterating the allegations of the pleas. previously filed by him, excepting to the petition as not disclosing any cause of action, denying each averment of the petition not admitted in the pleas, and praying that the plaintiff's demand be rejected.

Upon the trial of the case judgment was rendered, dissolving the injunction, and authorizing Mayer to. execute the judgments enjoined. Judgment was also rendered in his favor, on the injunction bond, for ten per cent on the amounts enjoined (special damages as attorney's fees) and for twenty per cent on such amounts as general damages. An appeal by the plaintiff to the Supreme Court of Louisiana was dismissed for want of jurisdiction in that court to review the judgment. It was held that the appeal should have gone to the proper State Court of Appeals. 39 La. Ann. 313. Thereupon, an appeal was prosecuted to the Court of Appeals for the Second Circuit of the State of Louisiana, where the original judgment, after being amended by reducing the general damages to ten per cent, was affirmed. From that judgment Mrs. Marshall prosecuted the present writ of error.

*Mr. A. Q. Keasbey* for plaintiff in error. *Mr. Wheeler H. Peckham* filed a brief for same.

*Mr. Charles H. Boatner* for defendants in error.

*First.* · The amount involved was not sufficient to justify the removal of the cause, and the Circuit Court properly denied it.

Complainant has, according· to the allegations of her bill, twenty-three causes of action, but no one of them involves a value of as much·as five hundred dollars.

The causes of action. which she sets forth are not contradictory, and, therefore, under the laws of Louisiana, may be emulated or joined in the same suit, but for jurisdictional purposes each distinct cause of action must stand for itself. Thus, while one may in the same suit assert the ownership of a horse and also claim that defendant owes a sum of money.

the value of the horse cannot be added to the sum of money to make either original or appellate jurisdiction.

The supreme court of Louisiana very tersely says: "Common sense and logic alike point to the rule that a cause not appealable in amount to this court for the review of the judgment rendered therein cannot be made appealable here to review the judgment rendered in action of nullity in the same cause." *Marshall* v. *Holmes*, 39 La. Ann. 313, 315. The same principle applies in questions of removal.

*Second.* The removal should not have been allowed, because the complainant practically seeks to have the Federal court review the judgment of the state court in causes which were exclusively within the jurisdiction of the state court and which that court has finally decided.

In *Barrow* v. *Hunton*, 99 U. S. 80, 85, the court says: "The character of the cases themselves is always open to examination for the purpose of determining whether, *ratione materiæ*, the courts of the United States are incompetent to take jurisdiction thereof."

An examination of the case under consideration shows that David Mayer instituted twenty-three suits against as many tenants on complainant's plantation. She was made a party defendant in each case and judgment prayed against her for the amount due by her codefendant. One of these cases was selected as a test case and tried, the plaintiff introducing all the evidence on which he relied to prove that Mrs. Marshall had authorized her agent to make contracts with persons furnishing her tenants necessary supplies, by which she waived in their favor her superior lien as lessor.

The state court has, therefore, in each of these cases, considered Mrs. Marshall's denial of authority and decided against her. She now seeks, by cumulating twenty-three distinct demands in one suit, to have this court review the judgments which have been rendered against her. This cannot be done. *Nougue* v. *Clapp*, 101 U. S. 551; *Graham* v. *Boston, Hartford & Erie Railroad*, 118 U. S. 161.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

After the filing of the petition for removal, accompanied by a sufficient bond, and alleging that the controversy was wholly between citizens of different States, the state court was without authority to proceed further if the suit, in its nature, is one of which the Circuit Court of the United States could rightfully take jurisdiction. If, under the act of Congress, the cause was removable, then, upon the filing of the above petition and bond, it was in law removed so as to be docketed in that court, notwithstanding the order of the state court refusing to recognize the right of removal. *Steamship Co.* v. *Tugman,* 106 U. S. 118, 122; *St. Paul & Chicago Railway* v. *McLean,* 108 U. S. 212, 216; *Stone* v. *South Carolina,* 117 U. S. 430; *Crehore* v. *Ohio & Miss. Railway,* 131 U. S. 240.

Is the right of removal affected by the fact that no one of the judgments against the plaintiff in error exceeded the amount — five hundred dollars exclusive of costs — limited, by the act of 1875, for the jurisdiction, whether original or upon removal, of a Circuit Court of the United States, in suits between citizens of different States? We think not. The judgments aggregate more than three thousand dollars. They are all held by Mayer, and are all against Mrs. Marshall. Their validity depends upon the same facts. If she is entitled to relief against one of the judgments, she is entitled to relief against all of them. The cases in which they were rendered were, in effect, tried as one case, so far as she and Mayer were concerned; for the parties stipulated that the result in each one not tried should depend upon the result in the one tried. As all the cases not tried went to judgment in accordance with the result in the one tried; as the property of Mrs. Marshall was liable to be taken in execution on all the judgments; as the judgments were held in the same right; and as their validity depended upon the same facts, she was entitled, in order to avoid a multiplicity of actions, and to protect herself against the vexation and cost that would come from numerous executions and levies, to bring one suit for a decree finally determining the matter in dispute in all the cases. And as, under the rules of equity obtaining

in the courts of the United States, such a suit could be brought, the aggregate amount of all the judgments against which she sought protection, upon grounds common to all the actions, is to be deemed, under the act of Congress, the value of the matter here in dispute.

According to the averments of the original petition for injunction filed in the state court — which averments must be taken to be true in determining the removability of the suit — the judgments in question would not have been rendered against Mrs. Marshall but for the use in evidence of the letter alleged to be forged. The case evidently intended to be presented by the petition is one where, without negligence, laches or other fault upon the part of petitioner, Mayer has fraudulently obtained judgments which he seeks, against conscience, to enforce by execution. While, as a general rule, a defence cannot be set up in equity which has been fully and fairly tried at law, and although, in view of the large powers now exercised by courts of law over their judgments, a court of the United States, sitting in equity, will not assume to control such judgments for the purpose simply of giving a new trial, it is the settled doctrine that "any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery." *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332, 336; *Hendrickson* v. *Hinckley,* 17 How. 443, 445; *Crim* v. *Handley,* 94 U. S. 652, 653; *Metcalf* v. *Williams,* 104 U. S. 93, 96; *Embry* v. *Palmer,* 107 U. S. 3, 11; *Knox County* v. *Harshman,* 133 U. S. 152, 154; 2 Story's Eq. Jur. §§ 887, 1574; *Floyd* v. *Jayne,* 6 Johns. Ch. 479, 482. See also *United States* v. *Throckmorton,* 98 U. S. 61, 65.

But it is contended that it was not competent for the Circuit Court of the United States, by any form of decree, to deprive Mayer of the benefit of the judgments at law; and that Mrs. Marshall could obtain the relief asked only in the court in

which the judgments at law were rendered. Is it true that a Circuit Court of the United States, in the exercise of its equity powers, and where diverse citizenship gives jurisdiction over the parties, may not, in any case, deprive a party of the benefit of a judgment fraudulently obtained by him in a state court, the circumstances being such as would authorize relief by the Federal court, if the judgment had been rendered by it and not by a state court?

A leading case upon this subject is *Barrow* v. *Hunton*, 99 U. S. 80, 82, 83, 85. That was a suit in one of the courts of Louisiana to annul a judgment rendered in a court of that State, upon the ground that it was founded upon a default taken, without lawful service of the petition and a citation, and because, prior to the judgment, the party seeking to have it set aside had been adjudged a bankrupt. The case was removed to the Circuit Court of the United States, and was subsequently remanded to the state court. This court held that the jurisdiction of the Circuit Court depended upon the question whether the action to annul the judgment was or was not in its nature a separate suit, or only a supplementary proceeding so connected with the original suit as to form an incident to it, and to be substantially a continuation of it. It said: "If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States courts could not properly entertain jurisdiction of the case. Otherwise, the Circuit Courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different States. Such a result would be totally inadmissible. On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and according to the doctrine laid down in *Gaines* v. *Fuentes*, 92 U. S. 10, the case might be within the cognizance of the Federal courts. The distinction between the two classes of cases may

be somewhat nice, but it may be affirmed to exist. In the one class, there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts ; and in the other class, the investigation of a new case, arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

Referring to the provisions of the Louisiana Code of Practice authorizing an action to annul a judgment obtained through fraud, bribery, forgery of documents, etc., the court said that it was not disposed to allow the fact that, by the local law, an action of nullity could only be brought in the court rendering the judgment, or in the court to which the judgment was taken by appeal, to operate so far as to make it an invariable criterion of the want of jurisdiction in the courts of the United States. " If," the court said, " the state legislatures could, by investing certain courts with exclusive jurisdiction over certain subjects, deprive the Federal courts of all jurisdiction, they might seriously interfere with the right of the citizen to resort to those courts. The character of the cases themselves is always open to examination for the purpose of determining whether, *ratione materiæ*, the courts of the United States are incompetent to take jurisdiction thereof. State rules on the subject cannot deprive them of it." As that proceeding was equivalent in common-law practice to a motion to set aside the judgment for irregularity, or to a writ of error *coram vobis*, and as the cause of nullity related to form only, the case was held not to be cognizable in the courts of the United States.

The rules laid down in *Barrow* v. *Hunton* were applied in *Johnson* v. *Waters*, 111 U. S. 640, 667, and *Arrowsmith* v. *Gleason*, 129 U. S. 86, 101. In *Johnson* v. *Waters*, this court upheld the jurisdiction of the Circuit Court of the United States, by a decree in an original suit, to deprive parties of the benefit of certain fraudulent sales made under the orders of a Probate Court of Louisiana, which court, by the law of that State, had exclusive jurisdiction of the subject matter of the proceedings out of which the sales arose. After observing

that the Court of Chancery is always open to hear complaints against fraud, whether committed *in pais* or in or by means of judicial proceedings, the court said : " In such cases, the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it." In *Arrowsmith* v. *Gleason*, the grounds of the jurisdiction of the Circuit Court of the United States to entertain an original suit, — the parties being citizens of different States — to set aside a sale of lands fraudulently made by the guardian of an infant, under authority derived from a Probate Court, are thus stated : " These principles control the present case, which, although involving rights arising under judicial proceedings in another jurisdiction, is an original, independent suit for equitable relief between the parties ; such relief being grounded upon a new state of facts, disclosing not only imposition upon a court of justice in procuring from it authority to sell an infant's lands when there was no necessity therefor, but actual fraud in the exercise, from time to time, of the authority so obtained. As the case is within the equity jurisdiction of the Circuit Court, as defined by the Constitution and laws of the United States, that court may, by its decree, lay hold of the parties, and compel them to do what according to the principles of equity they ought to do, thereby securing and establishing the rights of which the plaintiff is alleged to have been deprived by fraud and collusion."

These authorities would seem to place beyond question the jurisdiction of the Circuit Court to take cognizance of the present suit, which is none the less an original, independent suit, because it relates to judgments obtained in the court of another jurisdiction. While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge that Mayer shall not enjoy the inequitable advantage obtained by his judgments. A decree to that effect

would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a state court. It would simply take from him the benefit of judgments obtained by fraud.

It was contended at the bar that the cases of *Nougué* v. *Clapp*, 101 U. S. 551, and *Graham* v. *Boston, Hartford & Erie Railroad*, 118 U. S. 161, 177, announce a different rule. We do not understand those cases to proceed upon any ground inconsistent with the principles announced in the cases above cited. It is true that in *Nougué* v. *Clapp* the Circuit Court of the United States was asked to set aside a decree of a state court, as well as a sale had under it, upon the ground that the decree was obtained and the sale conducted pursuant to a fraudulent conspiracy, to which the person obtaining the decree, and who became the purchaser at the sale, was a party. Here the resemblance between that case and the one before us ends; for in *Nougué* v. *Clapp* it did not appear, nor was it alleged, that the facts constituting the fraud were not, before the rendition of the decree, within the knowledge of the party seeking its annulment, or could not have been discovered in time to bring them in some appropriate mode to the attention of the court while the decree was within its control. For aught that appears, that suit was brought simply to obtain a rehearing in the Circuit Court of the United States, sitting in equity, of issues that were, or, by proper diligence, could have been, fully determined in the suit at law in the state court. The relief there asked could not have been granted consistently with the rule that equity will not interfere with a judgment at law, even where the party has an equitable defence, if he could, by the exercise of diligence, have availed himself of that defence in the action at law to which he was a party. This requirement of diligence is, as it ought to be, enforced with strictness.

The case of *Graham* v. *Boston, Hartford & Erie Railroad* does not differ in principle from *Nougué* v. *Clapp*.

The case before us is unlike the two last cited. While the court, upon final hearing, would not permit Mrs. Marshall,

being a party to the actions at law, to plead ignorance of the evidence introduced at the trial, it might be that relief could be granted by reason of the fact, distinctly alleged, that some of the necessary proof establishing the forgery of the letter was discovered after the judgments at law were rendered, and after the legal delays within which new trials could have been obtained, and could not have been discovered by her sooner. It was not, however, for the state court to disregard the right of removal upon the ground simply that the averments of the petition were insufficient or too vague to justify a court of equity in granting the relief asked. The suit being, in its general nature, one of which the Circuit Court of the United States could rightfully take cognizance, it was for that court, after the cause was docketed there, and upon final hearing, to determine whether, under the allegations and proof, a case was made which, according to the established principles of equity, entitled Mrs. Marshall to protection against the judgments alleged to have been fraudulently obtained.

For the reasons stated, we are of opinion that this suit was removable from the state court; and that the court below should have reversed the judgment of the Eighth District Court in and for the Parish of Madison, and remanded the cause to the latter court with direction to set aside all orders made after the filing of the petition and bond for the removal of the suit into the Circuit Court of the United States, and to proceed no further in it.

*The judgment is reversed, and the cause remanded for such proceedings as are consistent with this opinion.*