## AMERICAN BAKERIES CO. v. VINING
### et al.
### No. 1282.

District Court, S. D. Florida.
Oct. 30, 1935.

Kurtz & Reed and Marion Sibley, all of Miami, Fla., for plaintiff.

E. F. P. Brigham, of Miami, Fla., for defendant.

RITTER, District Judge.

The plaintiff has filed a bill in this court to prevent the defendants from obtaining any benefits from a judgment obtained in the state circuit court and to prevent the enforcement of it on the ground of fraud and perjured testimony in the trial of the case in said court.

This litigation has an extended record, as set out in the bill and the two decisions of the Supreme Court of Florida hereinafter referred to.

On May 16, 1933, the defendant, Eugenia Vining, age eighteen months, the minor daughter of N. F. Vining, by her next friend and father, obtained a judgment in a negligence suit against the plaintiff here by way of damages in the sum of $12,500.

On August 8, 1933, for errors alleged to have been committed by the trial court, the plaintiff here, American Bakeries Company, was granted a new trial. From this order of new trial, the defendants prose-cuted a writ of error to the Supreme Court of Florida.

On March 1, 1935, the Supreme Court of Florida (118 Fla. 572, 159 So. 670) reversed said circuit court and directed in its mandate that a final judgment should be entered for the defendant here. Upon motion for rehearing in the Supreme Court, the same was denied on April 5, 1935, and final judgment in accordance with the Supreme Court mandate was entered by the circuit court against the plaintiff here on April 9, 1935.

It was brought to the attention of the circuit court, after entry of judgment, that there had been false testimony introduced on the part of the plaintiff which vitiated the judgment; the said false and perjured testimony being substantially the same as set up in the bill filed in this court. Thereupon the judge of the circuit court referred the matter to circuit court commissioners appointed by him who conducted a hearing and took evidence covering more than a thousand pages of testimony concerning the charges of fraud.

On May 13, 1935, the plaintiff here, based upon the evidence of fraud previously adduced before the circuit judge and the circuit court commissioners, filed an extraordinary motion for new trial in the circuit court, which the circuit court refused to pass upon because under the state practice a judgment sought to be reviewed cannot be reviewed by the circuit judge without the permission and consent of the Supreme Court of Florida.

On May 21, 1935, plaintiff herein filed its extraordinary motion for the recall of the mandate in the Supreme Court of the state of Florida and for an order granting permission to the trial judge to entertain and pass upon the same matters of fraud which are asserted in the bill in this court. The said motion set up in detail the matters of fraud presented to this court in the bill, and attached thereto the voluminous evidence and testimony which was taken in the circuit court and before the circuit court commission.

On September 28, 1935, the Supreme Court of the state of Florida handed down its opinion (163 So. 396, 398) on said extraordinary motion, giving the history of the litigation, and denied the motion, giving its reason therefor, and stated (see copy of opinion of Supreme Court attached to bill): "We entertain no doubt of the

324

power of this court to direct the trial court to entertain an extraordinary motion for a new trial in a proper case, where it is established that a material witness at the trial committed perjury, or even that he was mistaken in his testimony, provided such testimony relates to a material issue and is not merely cumulative, and the showing here is timely made, but, after judgment has been entered in the trial court pursuant to a mandate of this court, we think that nothing less than a showing of conviction of the alleged perjurer would warrant our intervention in such a particular, as the attack at that time is in the nature of a collateral assault on a judicial adjudication that is presumptively ended, and therefore analogous to an attack on the judgment by a separate proceeding in equity."

Thereafter, on the 17th of October, 1935, the Supreme Court of the state of Florida again passed on the question on the motion for rehearing (163 So. 519, 520) (copy of opinion being furnished by counsel), and recites the matter of fraud and perjury presented in the petition, to that court, which are the same presented in the bill to this court at this time, and it appears that the court specifically considered all the matters relating to relief because of the fraud, and specifically held that the matters set up were not sufficient to warrant the court in granting the extraordinary motion for new trial, which it had the power to do, saying: "A careful re-examination and reconsideration of this case in all its phases has satisfied this court that no sufficient legal cause, discretionary or otherwise, has been made to appear to legally warrant this court in receding from, or modifying, its previous opinions and judgments in this case."

■ The question presented by this bill is whether a court of equity, granting as we must that this court has jurisdiction to act in a proper case to enjoin judgment creditors from enforcing a judgment in a state court on the ground of fraud, should grant the plaintiff, upon the facts presented here, such relief.

I do not think this is a case for equitable action as prayed for by the plaintiff, for the following reasons:

(1) Plaintiff had a full hearing on the fraud alleged in the state circuit court and in the Supreme Court of the state of Florida. The Supreme Court considered the matter on two occasions, and, after careful consideration, denied the plaintiff relief by way of a new trial upon the very allegations of fraud presented in the petition here. If the Supreme Court of the state of Florida has said that the facts presented are insufficient to warrant the opening up of a judgment, when that court specifically declared that it had the power to do so, this court will not now reverse the Supreme Court and take over this case for review. (See opinion of Supreme Court of Florida attached to bill.)

(2) The alleged fraud is intrinsic fraud, and the facts set forth in the bill were presented and argued to and considered by the Supreme Court, so they cannot here be presented as extrinsic. (See opinions attached to the bill.)

(3) This is not an independent suit based on extrinsic facts, as the facts have been determined against the plaintiff in the state court.

(4) The petition here amounts simply to an attempt to get this court to review and reverse the Supreme Court of Florida in a matter which it said was within its jurisdiction and upon which it passed.

(5) That concurrent jurisdiction cannot be invoked here, as the state court of concurrent jurisdiction has exercised its jurisdiction and determined the matter and this court will not now assume to exercise any original jurisdiction.

(6) This litigation should be terminated upon equitable principles.

(7) The plaintiff is guilty of laches. See opinion of Supreme Court of Florida (163 So. 396), September 28, 1935, attached to bill.

The plaintiffs seem to rely upon two cases, mainly, Chicago, R. I. & P. Ry. Co. v. Callicotte (C.C.A.) 267 F. 799, 810, 16 A.L.R. 386, and Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870, while the defendant presents the case of United States v. Throckmorton, 98 U.S. 61, 25 L. Ed. 93, as her authority.

In the Callicotte Case, the bill alleged a conspiracy in the state court to present a false case for the plaintiff and to prevent the defendant from putting in its own case in defense. The case was removed to the federal court, but nevertheless an appeal was taken to the Supreme Court of Missouri (204 S.W. 528; 274 Mo. 689, 204 S.W. 529), which afterwards affirmed the

judgment, but of course under the federal rule, upon removal, all jurisdiction was lost to the state courts. The gist of that case, as applicable here, is that the state Supreme Court, even in its later opinion, did not pass upon the matter of fraud. The court said: "But the remedy at law has now been exhausted and yet the merits of the company's application for relief have not been passed upon in the state courts, the Supreme Court of Missouri holding * * * that the lower court had no jurisdiction to entertain a motion for a writ of error coram nobis after the term and while an appeal from the original judgment was pending in the Supreme Court and holding; further, that, on the appeal from the judgment, relief from the alleged fraud could not be granted in the Supreme Court because that court was restricted to the record in the case as made at the trial."

It is very evident that the decision in this case was founded upon the fact that the Supreme Court and the state court were impotent to decide upon the merits of the fraud allegations, and therefore an independent suit was presented to the federal court. Had the merits of the fraud charge been considered by the state courts, the inference of that case is that the federal court would not act in equity.

Marshall v. Holmes, supra, is the case which the plaintiff urges this court to follow, for the reason that it seems to enlarge the facts upon which a court of equity will act in preventing the enforcement of a state court judgment on the ground of fraud.

It may seem that this case is in conflict with the case of United States v. Throckmorton, 98 U.S. 61, 65, 25 L.Ed. 93, where the rule is more restricted.

An attempt was made by the Circuit Court of Appeals of the Seventh Circuit in the case of Graver v. Faurot, 162 U.S. 435, 16 S.Ct. 799, 40 L.Ed. 1030, to get the Supreme Court of the United States to settle any conflict, but the court refused, and thus each of these cases stands as an authority for the choice of the District Court. The decisions of the various federal circuit and District Courts reveal that one or the other of these cases has been followed.

It is stated in Marshall v. Holmes, supra, 141 U.S. 589, page 596, 12 S.Ct. 62, 64, 35 L.Ed. 870: "While, as a general rule, a defense cannot be set up in equity which has been fully and fairly tried at law, and although, in view of the large powers now exercised by courts of law over their judgments, a court of the United States, sitting in equity, will not assume to control such judgments for the purpose simply of giving a new trial, it is the settled doctrine that 'any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery.'"

However, we may agree or disagree with the application of this rule to the facts set up in Marshall v. Holmes, this general statement of the law is what governed the court in that case and also in the Throckmorton Case, and the application of this rule, to my mind, is best illustrated and fixed in the Throckmorton Case. In that case the court said: "There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy; namely interest rei publicæ, ut sit finis litium, and nemo debet bis vexari pro una et cadam causa."

Further quoting: "The doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

And there is quoted in this opinion what Chief Justice Shaw said in Greene v. Greene, 2 Gray (Mass.) 361, 61 Am.Dec. 454: "The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be contradicted."

Further: "The acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of

competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and not to fraud in the matter on which the decree was rendered. That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

With this doctrine I agree, as far as the instant case is concerned, and I shall follow the Throckmorton Case.

The other cases cited by plaintiff are discussed in the cases above and need not be reviewed.

Taking the position, as I do, that the fraud alleged in the bill here was presented to the state courts of competent jurisdiction, and there heard and tried upon a voluminous taking of testimony before court commissioners, I find no equity in the bill, and the motion to dismiss is granted.