## AMERICAN BAKERIES CO. v. VINING et al.
### No. 7963.

Circuit Court of Appeals, Fifth Circuit.
Dec. 11, 1935.

Rehearing Denied Jan. 10, 1936.

Marion E. Sibley, W. L. Reed, and E. B. Kurtz, all of Miami, Fla., for appellant.

Edward F. P. Brigham, of Miami, Fla., and William W. Ogden, of New Orleans, La., for appellees.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

A bill was filed by American Bakeries Company in the District Court of the United States to enjoin a threatened sale under a judgment from a state court of Florida on the ground that the verdict for damages on which the judgment rested was procured by a conspiracy between the father as next friend of the plaintiff and certain witnesses that the latter should falsely testify, two of them to the circumstances of the occurrence in issue, they not having seen it, and a third as to the seriousness of the injury. On appropriate motions a temporary restraining order was dissolved and the bill dismissed, this appeal following. No evidence was introduced, the decision being given on the face of the bill and its exhibits, together with two opinions of the Supreme Court of Florida which are put into the record. The District Judge in a careful opinion held that the very matters in substance now put forward had been tried and adversely decided in the state courts and were not open to retrial on this bill. 13 F.Supp. 323. With this conclusion we agree.

Briefly stated, the case is that Eugenia Vining, while about eighteen months old, was run over by the truck of American Bakeries Company and injured. Suit was brought by her father as next friend. On the trial three witnesses appeared for the plaintiff claiming to be eyewitnesses and swearing to circumstances showing negligence; the driver of the truck and another being witnesses for the defense and swearing otherwise. A physician testified for the plaintiff to hearing murmurs in the femoral artery which he said showed serious injury to it. Other physicians disagreed with him and, as we understand the bill, so testified to the jury. A substantial verdict for the plaintiff was rendered. A motion for new trial was granted by the presiding judge on August 8, 1933, but on appeal the grant was reversed (118 Fla. 572, 159 So. 670), the Supreme Court of Florida holding that the evidence fully authorized the verdict for the plaintiff, and it ordered judgment on the verdict which accordingly was entered April 9, 1935. Meanwhile, during August, 1933, the Bakeries Company had discovered that two of the three persons testifying for plaintiff as eyewitnesses were not present, but had so testified at the request of the plaintiff's father on promise of pay if the case were won. This discovery was not made the ground of any motion in either the Supreme or trial court until the trial judge about April 12, 1935, made inquiry into the matter. Before him one of the two attacked witnesses admitted his perjury, as did the other after arrest on that charge, but

neither witness has been brought to trial therefor. On April 15th the plaintiff's father committed suicide, leaving a note stating that he "had been framed in the court house." Thereafter the Bakeries Company filed in the trial court an extraordinary motion for new trial, but it was thought that leave ought to be asked of the Supreme Court to set aside what was really that court's judgment. Accordingly, in May, 1935, and during the judgment term, an application was made in the Supreme Court of Florida whose allegations are in substance the same as those of the present bill except that the physician was not included in the alleged conspiracy. On elaborate consideration the Supreme Court denied the application and reaffirmed the former judgment. 163 So. 396. On rehearing the court said that, after a careful re-examination and reconsideration of the case in all its phases, it was satisfied that no sufficient legal cause, discretionary or otherwise, appeared to warrant receding from or modifying its previous opinions and judgments in the case. 163 So. 519.

It is apparent that the facts testified to by the soi-disant eyewitnesses and by the physician, who is now claimed to have produced by pressure on the artery the murmurs which he heard, were actually contested in the trial. The fraud and perjury were not so successful as to deceive the opposite party and prevent a contest. The truth of the testimony was controverted and passed on by the jury. The bill really sets up that there is now better and more satisfactory proof of its falsity than the mere contradiction of it then offered to the jury. The fraud and perjury is, say the respondents, according to United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93, intrinsic, so that an inquiry cannot be made into it by a court of equity, but the inquiry is concluded by the result of the trial. The complainants retort that a successful conspiracy by a plaintiff with his witnesses is more than a simple perjury or forgery, and ought, when discovered, always to be examinable as an extrinsic fraud when the conspiracy itself was not discovered and made an issue in the trial; and that the decision in Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870, said to be at variance with that in Throckmorton's Case, ought to be applied. That a verdict should stand which was produced or contributed to by a perjury or a forgery concocted by the winning party is indeed shocking to judicial sensibility, but, as pointed out in Throckmorton's Case, it is in the public interest that there should be an end of litigation, and it is the duty of litigants who are not in any manner prevented from fully presenting their case to do so, with no right to retry it except as allowed by ordinary review and extraordinary proceedings for a new trial on newly discovered evidence. The law does not guarantee correctness of juridical fact-finding, but, on condition of diligence, a fair and full trial only. It is to be observed in the present case that the plaintiff was an infant, who, of course, could participate in no fraud. The attacked physician admits no perjury, and no witness has yet said he was in any conspiracy. As to him, the case will stand on another inquiry as it did on the first. The plaintiff has one eyewitness who is not implicated in the alleged conspiracy with the other two, and whose testimony, agreeing with theirs, is sufficient to maintain her case if theirs be eliminated. On the question of a conspiracy by her next friend, by whose conduct she may be affected as one whom the law accredits as her representative in the litigation, she stands now deprived by his death of probably her only witness. Seeing that the recanting witnesses will be testifying to a transaction with a dead person, and that they who now say they sold their testimony for a price must be considered as capable of doing so again, a court of equity might well hesitate to credit them. But in any case the child would be entitled to another trial, and that before a jury, which a federal court of equity would have difficulty in giving her. The bill does not make a case of a wholly fictitious cause of action in which an injunction against enforcing the judgment would do full justice, as was true in Marshall v. Holmes. We mention these considerations affecting the merits, but do not rest our decision upon them, because the bill shows that the complainant, so far from being remediless elsewhere, had a remedy in the state courts where a new trial could have been granted, that it was availed of, and was denied upon the merits.

The Supreme Court of Florida denominated the application before it "an extraordinary motion in the nature of an application for a writ of error coram

nobis," but it did not hold the proceeding to be one on which it could not grant the relief sought, as did the Supreme Court of Missouri in Callicotte v. Chicago, R. I. & P. Ry. Co., 204 S.W. 528, Id., 274 Mo. 689, 204 S.W. 529, Chicago, R. I. & P. Ry. Co. v. Callicotte (C.C.A.) 267 F. 799, 810, 16 A.L.R. 386, but analogized it to an attack upon the judgment by a separate proceeding in equity, declared that it had no doubt of its power to permit an extraordinary motion for new trial in a proper case, but took the facts as the application stated them, and held originally and on rehearing that there should be no interference because of them. A judgment on demurrer or where the facts are similarly confessed is on the merits just as though they had been proven. Northern Pacific R. Co. v. Slaght, 205 U.S. 122, 27 S.Ct. 442, 51 L.Ed. 738; Gould v. Evansville & Crawfordsville R. Co., 91 U.S. 526, 23 L.Ed. 416; Aurora v. West, 7 Wall. 82, 99, 19 L.Ed. 42. The allegations concerning the physician do not make a substantially new or different case. He is but added as a further conspirator, and no one has sworn that he is such nor has he admitted it. We must accept as correct the view of the Supreme Court of Florida touching its own powers, and its judgment as to the impropriety of setting aside the verdict and ordering a new trial.

Judgment affirmed.