### TRUST CO. OF CHICAGO v. PENNSYLVANIA R. CO.

No. 10003.

United States Court of Appeals
Seventh Circuit.

July 3, 1950.

On Motion to Amend the Mandate
Aug. 21, 1950.

Theodore Schmidt, P. J. Cronin, Harry I. Parsons, all of Chicago, Ill. (Fay Warren Johnson, Chicago, Ill., of counsel), for appellant.

Jerome M. Brooks, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's decedent, while a resident of Chicago, on April 28, 1947, was injured at Warsaw, Indiana, while riding as a passenger on defendant's train running from Pittsburgh, through Ohio and Indiana to Chicago. He continued to live in Illinois until July 7, 1948, when he removed to Ohio, where he died September 6, 1948. Plaintiff, appointed and qualified administrator in Illinois, instituted suit in the United States District Court in Illinois, to recover damages because of decedent's death, claimed to have been caused by the injury, relying upon diversity of citizenship for jurisdiction. Defendant's special defense going to the power of the court to entertain the suit was overruled; the ensuing trial resulted in judgment against defendant, from which this appeal has been taken.

At the outset we are confronted with the question as to whether the District Court should have sustained defendant's objection to its authority to entertain and dispose of the cause of action asserted by plaintiff. Chapter 70, Section 2 of the Illinois Revised Statutes, authorizing suits to recover damages for deaths, contains this proviso: "Provided, further, that no action shall be brought or prosecuted in this State to recover damages for a death occurring out-

side of this State where a right of action for such death exists under the laws of the place where such death occurred and service of process of such suit may be had upon the defendant in such place." Indiana at that time had a statute permitting maintenance of such suits. Burns' Indiana Statutes, Sec. 2, Par. 404; Memphis & C. Packet Co. v. Pikey, 142 Ind. 304, 40 N.E. 527. Ohio, too, had given its courts jurisdiction of similar claims. Loftus v. Pennsylvania Road, 107 Ohio St. 352, 140 N.E. 94; Cincinnati, H. & D. R. Co. v. Thiebaud, 6 Cir., 114 F. 918; Drea v. Carrington, 32 Ohio St. 595. The railroad traversed each state and appropriate statutes provided methods for procuring service of process in the respective jurisdictions.

The District Court, relying on our decisions in Stephenson v. Grand Trunk Western R. Co., 7 Cir., 110 F.2d 401, 132 A.L.R. 455, and Davidson et al. v. Gardner, 7 Cir., 172 F.2d 188, struck that portion of defendant's amended answer which averred that Indiana provided a remedy and that, as a result, the suit could not be maintained in Illinois. Defendant insists that, in view of the provisions of the Illinois statute, the court was without authority to entertain and dispose of plaintiff's claim.

The courts of the United States are of limited jurisdiction, possessing only such powers as are either expressly or by necessary implication conferred on them; the policy of the statute conferring jurisdiction on the ground of diversity of citizenship calls for strict construction. Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951; Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077. It is provided by act of Congress, Rev.St. Sec. 721, 28 U.S.C.A. § 725 [now § 1652], derived from Judiciary Act 1789, Sec. 34, that the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply. Under this statute, except in matters governed by the Federal Constitution or by acts of congress, the law to be applied is that of the state. The purpose of the act is to avoid maintenance within one state of two divergent or conflicting systems of law, one to be applied in the state courts and the other in federal courts, in case of diversity of citizenship. West v. American Telephone & Telegraph Co., Ohio, 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956, reversing 6 Cir., 108 F.2d 347, certiorari granted 310 U.S. 618, 60 S.Ct. 979, 84 L.Ed. 1392, mandate conformed to 6 Cir., 121 F.2d 142. Thus, a federal court will follow and accept as correct the decisions of the highest court of a state as to the powers and the extent of the jurisdiction of the courts of that state. American Bakeries Co. v. Vining, 5 Cir., 80 F.2d 932, affirming D.C., 13 F.Supp. 323; Manning v. Ketcham, 6 Cir., 58 F.2d 948.

Since the Stephenson and Davidson decisions by this court, the Supreme Court has made it clear, we think, that the authorities upon which we relied in those cases are no longer decisive. Thus, in Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 1234, after commenting that "it is conceded that if the present case were in the Kansas court it would be barred," the cout said: "Since that cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court. See Cities Service Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719. It accrues and comes to an end when local law so declares. West v. American Tel. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Guaranty Trust Co. v. York, supra, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. Where local law qualifies or abridges it, the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 is transgressed." It added that the court is powerless to give the cause of action "longer life in the federal court than it would have had in the

state court without adding something to the cause of action."

In Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, decided at the same time, where a Mississippi statute provided that a contract with a nonresident corporation which had not been authorized to do business within the state was void, plaintiff, such a corporation, brought suit in the federal court; the state statute was interposed as a defense. The Court of Appeals, in reliance on David Lupton's Sons Co. v. Automobile Club, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177, Ann.Cas.1914A, 699, held that the fact that respondent could not sue in Mississippi did not close the doors of the federal court sitting in that state. The Supreme Court reversed saying: "We said in Angel v. Bullington that the case of Lupton's Sons had become 'obsolete' insofar as it was 'based on a view of diversity jurisdiction which came to an end with Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487,' [330 U.S. 183, 192, 67 S.Ct. 657, 662, 91 L.Ed. 832]. Bullington had sued Angel in a North Carolina court for a deficiency judgment on the sale of realty under a deed of trust. The Supreme Court of North Carolina dismissed the action because of a North Carolina statute which disallowed a deficiency judgment in such a case and which the North Carolina Supreme Court construed to be 'a limitation of the jurisdiction of the courts of this state.' Bullington v. Angel, 220 N.C. 18, 20, 16 S.E.2d 411, 412, 136 A.L.R. 1054. Thereafter Bullington sued in the federal court of North Carolina by reason of diversity of citizenship. We held that that suit could not be maintained because (1) the prior suit was *res judicata;* and (2) the policy of Erie R. Co. v. Tompkins *precluded maintenance in the federal court in diversity cases of suits to which the State had closed its courts."* [337 U.S. 535, 69 S.Ct. 1236] (Emphasis supplied.) The court added "Angel v. Bullington * * * followed the view of Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S. Ct. 1464, 89 L.Ed. 2079, 60 A.L.R. 1231, that for purposes of diversity jurisdiction a federal court is 'in effect, only another court of the State * * *.' In that case we required the federal court in a diversity case to apply the statute of limitations of the State in equity actions and thus to follow local law, as had previously been done in cases involving burden of proof, (Cities Service Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; cf. Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284); contributory negligence (Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719); conflict of laws (Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462); and accrual of the cause of action (West v. American Tel. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956). The York case was premised on the theory that a right which local law creates but which it does not supply with a remedy is no right at all for purposes of enforcement in a federal court in a diversity case; that *where in such cases one is barred from recovery in the state court, he should likewise be barred in the federal court.* (Emphasis supplied.) The contrary result would create discriminations against citizens of the State in favor of those authorized to invoke the diversity jurisdiction of the federal courts. It was that element of discrimination that Erie R. Co. v. Tompkins was designed to eliminate." In Cohen v. Beneficial Loan Corp., 337 U.S. 541 at page 555, 69 S.Ct. 1221, 1230, the court said: "* * * Erie R. Co. v. Tompkins and its progeny have wrought a more far-reaching change in the relation of state and federal courts and the application of state law in the latter whereby in diversity cases the federal court administers the state system of law in all except details related to its own conduct of business. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231." See also Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462; Slater v. Mexican Nat'l R. R. Co., 194 U.S. 120, 128, 24 S.Ct. 581, 48 L.Ed. 900; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed.

2079, 160 A.L.R. 1231; Gallagher v. Florida East Coast Ry. Co., D.C., 196 F. 1000.

■ With these authoritative pronouncements in mind, we turn to the situation confronting the District Court in the case at bar. The Illinois statute expressly forbids maintenance of an action by an administrator for wrongful death occurring in another state where the plaintiff has a remedy in the jurisdiction where the death occurred and can obtain service of process upon the defendant. Under the decisions of the Supreme Court, when a case comes into the District Court under the diversity statute, that court is only another court enforcing the cause of action which, in the absence of diversity, would necessarily have been brought in the state court. If the District Court should have authority to entertain and dispose of a suit barred in the state court, it would mean that a citizen suing a nonresident corporation and having a claim of more than $3,000 would have a right of action in the federal court while a plaintiff similarly situated but having a claim for only $2,000 would have no standing in either state court or federal court. To hold that the District Court may entertain the suit under such circumstances, would create obvious discrimination between two citizens, giving one a remedy and leaving the other wholly devoid of right of action. Such a result is clearly beyond the intent of the Supreme Court's decisions.

We conclude that under the Illinois statute, to which we are bound to give full credit, it was error upon the part of the District Court to strike the special defense averring facts which, if true, would have closed the door upon plaintiff's claim both in the state court and in the federal court. At the time we decided the Stephenson and Davidson cases there were what we considered authoritative precedents impelling our conclusions. However, since their decision, the Supreme Court has spoken in no uncertain terms, its language being such, we are convinced, as we have pointed out, as to undermine their basic reasoning. Thus, Interstate Realty Co. v. Woods, 5 Cir., 170 F.2d 701, upon which we relied, was reversed in Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235. The District Court was bound by our adjudications as authoritative in this circuit until the Supreme Court decided otherwise. It should not be blamed for an error resulting from its reliance upon our decisions. However, in view of the fact that the recent announcements of the Supreme Court, as we now believe, preclude adherence to Stephenson and Davidson, it follows that error has intervened and that, consequently, the judgment must be reversed. The Supreme Court has spoken authoritatively; all lower courts must conform.

■ Nor do we think this means that the state statute has impaired the federal jurisdiction. Federal diversity jurisdiction, created by the Congressional act, as interpreted by the Supreme Court, is limited in the absence of other grounds for jurisdiction, to cases which the state court might entertain. In other words, implicit in the diversity statute, is the limitation resulting from the Supreme Court's interpretation of diversity jurisdiction. If, as the court says, the federal court, sitting in diversity cases, is only another court enforcing the remedies cognizable by the state court, the limitation upon diversity jurisdiction is inherent in the act creating Federal jurisdiction solely upon the accident of diversity. No new remedies are created by the statute; it merely lodges in another court the authority to enforce remedies cognizable in the state court. The federal court, by congressional intent, as the Supreme Court rules, is just the same as that of the state court (provided diversity exists), no more and no less. If, as has been suggested, diversity jurisdiction has been limited, that limitation arises not from action of the state but exists inherently in the federal statute itself as authoritatively interpreted.

■ Plaintiff insists, however, that defendant, in paragraph II of its answer, in which it questioned the right of the District Court to entertain the suit, did not properly raise the issue. The averments are that plaintiff ought not to maintain its action because the death of plaintiff's intestate occurred outside of the state of Illinois and in the state of Ohio. The injury itself, as

we have seen, occurred in Indiana and after this injury, claimed to have been caused by the wrongful act of defendant, plaintiff's intestate's death occurred in Ohio. Defendant asserted further that the laws of the state of Indiana provide for an action for wrongful death, that service of process might have been procured upon it within that state and that, in view of the Illinois statute providing that no action shall be brought within Illinois for a death occurring outside of the state, if a right of action for such death exists under the law of the state where death occurred and service of process of such suit may be had, the District Court was without right to entertain and dispose of the suit. Plaintiff insists that defendant's answer, in order to have barred the suit in the District Court, should have asserted that a remedy existed in Ohio as well as in Indiana.[1] For solution of this question, we must look to the law of Illinois.

█ The statute of Illinois formerly provided that no action should be "brought or prosecuted" in that state to recover damages for a death occurring outside of the state, whereas the present statute has added a further provision that in order to prevent maintenance of such an action there must be a remedy in the state where the death occurred. In considering the former statute, in Crane v. Chicago & Western Indiana Railroad Co., 233 Ill. 259 at page 261, 84 N.E. 222, 223, the Supreme Court of Illinois said: "If the death were held to be the cause of action, then the amendment would have to be construed as intended to prohibit the bringing of a suit in this state if the death occurred in another state, although the unlawful act which caused the injury that resulted in the death may have occurred in this state. But the death is not made the cause of action by our statute. * * * By that section *it is not the death, but the wrongful act, neglect, or default which causes the death,* that constitutes the

cause of action. (Emphasis supplied.) This was so held in Holton v. Daly, 106 Ill. 131, at page 137, where it was said: 'The cause of action is plainly the wrongful act, neglect, or default causing death and not merely the death itself. Damages are recoverable, not for the killing, but, as was observed by Comstock, J., in Dibble v. New York and Erie Railroad Co., 25 Barb., N.Y., 183, as quoted by him in his dissent in Whitford v. Panama Railroad Co., 23 N.Y. 486, "notwithstanding or in spite of the death which ensues. The statute recognizes but one cause of suit, and that is the wrong done, irrespective of its consequences."' An injury resulting from the wrongful act, neglect or default of another gives the injured party, if he survives, a right of action, and if he dies, this right of action survives to his personal representatives under the statute. * * *

"We are of opinion the proviso to section 2, * * * must be construed to mean that no action shall be brought in this State to recover damages for a death where the wrongful act, neglect, or default causing the death occurred outside of this state. To construe said proviso to mean that, notwithstanding the wrongful act that caused the death occurred in this state, if the injured party was removed to another State before death resulted and there died from such injuries no action could be maintained in this state, would appear so absurd and contrary to the ends of justice that such construction should not be placed upon the language used unless it is so plain and unambiguous that it will admit of no other rational construction. * * *

"In this case the appellant's intestate was injured by the wrongful act of the appellee's lessee in this state, for whose wrongful act the appellee is responsible. William Frank was taken to a hospital just across the state line and died in the state of Indiana. Had he returned to this state and there died,

---

1. In view of the accepted rule that federal courts will take judicial notice of the laws of any state of the union whether statutory or the result of judicial decisions, it would seem that, in view of the fact that Ohio does provide such a remedy, the court would have been justified in taking judicial notice of that statute. We think it extremely doubtful that, even though there is no plea of lack of authority to proceed, the District Court, taking judicial notice of all state statutes, could enter judgment when the Illinois statute says there shall be no judgment.

it must be conceded his personal representatives could maintain this action. While the action could only be maintained in case of the death of William Frank, the wrongful act of the appellee's lessee, and not the death resulting from such act, is the foundation of the action. We think it obvious that the object of the legislature in passing the provision of section 2 above referred to, was to prevent the bringing of actions in the courts of this state to recover damages for personal injuries resulting in death where the wrongful act causing it occurred outside of the limits of this state, and not to prevent the bringing of actions to recover damages for personal injuries where the wrongful act, neglect, or default took place in this state although the death occurred outside of the state."

In Carroll v. Rogers, 330 Ill.App. 114 at page 118, 70 N.E.2d 218, 220, the court said: "In both Dougherty v. American McKenna Process Co., 255 Ill. 369, 99 N.E. 619, L.R.A. 1915F, 955, Ann.Cas.1913D, 568, and Wall v. Chesapeake & O. R. Co., 290 Ill. 227, 125 N.E. 20, the wrongful act and the death for which damages were sought occurred outside of the state, and hence under the plain terms of the 1903 proviso the court held that the actions were barred in this state because they were prohibited by a specific law."

The law in other jurisdictions is, quite generally, the same. Thus an editorial note in 133 A.L.R. Annotated, p. 268, concludes that "where the question relates to the choice between the law of the place in which the fatal injury was inflicted and the law of the place in which the resulting death took place, it is settled * * * by practically all the decisions * * * that the place of the tort within the contemplation of the rule that the law of the situs of the tort governs, is the place where the fatal injury was inflicted and not the place where the resulting death occurred. * * * So, * * * the court in Van Doren v. Pennsylvania R. Co., 3 Cir., 1899, 93 F. 260, took the view that the law of the place of the fatal injury governs, although the death occurs in another state, in the absence of any statutory provision confining the action to cases where both the injury and the resulting death occur within the state, and

said: 'The tort, which is the gist of the action, is negligence, unlawful violence, or a wrongful act proximately causing personal injury resulting in death. While the action lies to recover damages for death, death does not constitute the tort.'" And it has been held that a cause of action for wrongful death is governed by the law of the state in which the fatal accident occurs and not by the law of the state in which the death subsequently takes place. Melton's Adm'r v. Southern R. Co., 236 Ky. 629, 33 S.W.2d 690. And whether a cause of action for fatal injuries received in one state survives the death in another of the injured person, is governed by the law of the former and not that of the latter state, the court holding that the law of the jurisdiction in which the cause of death was inflicted, regardless of where the death took place, governs. Petrusha v. Korinek, 237 Mich. 583, 213 N.W. 188. In view of the law of Illinois, defendant's objection to the authority of the District Court to entertain the suit was sufficient and should not have been stricken.

The judgment is reversed and remanded with directions to entertain the special defense pleaded and to proceed in accord with the announcements herein contained.

On Motion to Amend the Mandate.

LINDLEY, Circuit Judge.

 Plaintiff moves to amend our mandate issued July 28, 1950, which reversed the judgment and remanded the cause with directions to entertain the special defense pleaded and, in doing so, to proceed in accord with the announcements of our opinion. Upon that mandate, the cause stands at issue upon the complaint and the answer. Plaintiff now asks us to direct the District Court to transfer the cause to the United States District Court for the Northern District of Indiana, pursuant to Section 1406(a), Title 28 U.S.C.A. That section has no applicability to the present situation. However, Section 1404 gives the parties the right to a transfer under the conditions specified therein.

We think we are without power to grant the motion. The record discloses that defendant made a similar timely motion to

transfer the cause to Ohio. To this plaintiff objected, insisting that the Northern District of Illinois was the more convenient forum. The court, exercising its discretion, denied the motion. The propriety of that action was not questioned in the appeal to this court; it was not included in appellant's "errors relied upon for reversal." Consequently we had no right to and did not consider it, and have at this time no greater power than we had then.

Whether such a motion, made after remand, should be allowed, whether the court should vacate its former order denying a similar motion, are questions not before us but lying wholly within the discretion of the District Court. That discretion is not lodged in the Court of Appeals; we can only review the decision of the District Court when and if made to determine whether the court's discretion has been abused. We may not tell the trial court ahead of time how to exercise its discretionary powers. See Schoen v. Mountain Producers Corp., et al., 3 Cir., 170 F.2d 707 at page 714, 5 A.L.R.2d 1226.

The motion is denied.