### INTERNATIONAL INDEMNITY CO. v. PETERSON et al.

(District Court, D. Minnesota. Third Division. April 30, 1925.)

**Judgment ⟨⟩⇒444—Perjury of plaintiff held not ground for enjoining collection.**

The fact that plaintiff, in an action in a state court for personal injury, and others of his witnesses, conspired to commit, and did commit, perjury as to the extent of his injury, *held* not to afford basis for a suit in equity in a federal court to enjoin collection of the judgment recovered, where there undoubtedly was an injury, and its extent was one of the issues, and where they did nothing to suppress evidence available to defendant on that issue, but which defendant did not discover until after judgment and affirmance.

In Equity. Suit by the International Indemnity Company against Jens A. Peterson and others. On motion for preliminary injunction, and motion by defendants to dismiss bill. Motion for injunction denied, and motion to dismiss granted.

Willard Converse, of South St. Paul, Minn., for complainant.

Humphrey Barton, of St. Paul, Minn., for defendants.

JOHN B. SANBORN, District Judge. The complainant, an insurance company of California, was an insurer under an automobile liability policy of the defendants Edward Mauer and Clarence Mauer, of St. Paul, Minn., doing business as Mothers' Friend Wet Wash Laundry. A truck belonging to them and driven by A. W. Hoyle, their employee, on the 24th day of October 1923, collided with the defendant Edward Peterson, a 12 year old boy, and injured him. Suit was brought on his behalf by his father, the defendant Jens A. Peterson, against the Mauers and Hoyle in the state district court of Ramsey county, and the complainant, under its contract of insurance, assumed the defense of the action.

The complaint alleged as the cause of the accident the negligence of the driver of the truck, and injuries, among others, to the boy's ears, resulting in loss of hearing. The answer denied the negligence and denied injury, but admitted that the boy and the truck came into contact with each other. The case was tried before a jury on April 10, 1924.

It was the testimony of Edward Peterson and his witnesses, most of whom were near relatives, that prior to the accident his left ear was normal, but after the accident the hearing was greatly impaired. His physicians testified that, assuming that to be the fact, the condition was in their judgment caused by the accident. The family physician, however, stated that he had seen the ear prior to the accident and that it was normal.

The jury found a verdict against the defendants Mauer and the driver of the truck for $7,500. A motion for judgment notwithstanding the verdict or a new trial was made. One of the grounds for a new trial was: "Material evidence, newly discovered, which with reasonable diligence could not have been found and produced at the trial."

This newly discovered evidence was a record of the public medical dispensary at the University of Minnesota, indicating that on March 3, 1923, the drums of the boy's right and left ear were broken, and that the same abnormal conditions complained of with respect to the left ear at the trial existed at that time. The state court denied the motion for a new trial, on condition that the verdict be reduced to $4,000. An appeal was taken to the state Supreme Court, and the trial court was affirmed.

The complainant brings this action to perpetually enjoin the collection of the judgment, and has procured a restraining order, and the matter now comes up on an order to show cause why a writ of preliminary injunction should not issue, and also upon motions of the defendants Peterson and Jensen to dismiss, on the ground that the facts stated do not entitle the complainant to the relief asked for. The complainant alleges that the defendants Peterson and Jensen, all of whom testified upon the trial, conspired together to defraud the complainant by testifying falsely as to the condition of the boy's left ear, and by suppressing the fact that this ear, as well as his right ear, had been injured in an accident in Denmark when he was five years of age. It further alleges that these defendants did suppress the facts as to his left ear, and caused the examining physicians, both before and upon the trial, to be misled, and caused the court and jury to be misled, which resulted in an unjust and improper verdict; that the complainant did not know of the existence of the conspiracy until after it had exhausted its remedies in the state court.

The complainant has attempted to bring itself within the rule laid down in the case of Chicago Rock Island & Pacific Ry. v. Callicotte (C. C. A.) 267 F. 799, 16 A. L. R. 386. Callicotte had recovered a judgment in a personal injury action in a state court in Missouri. On appeal the Supreme Court of that state affirmed the judgment. 204 S. W. 528; 274 Mo. 689, 204 S. W. 529. On the trial in the state court it appeared from the plaintiff's testimony that, since a day or two after the accident and for a period of six months, he had been completely paralyzed in his lower limbs; that he had no control over them or sensation in them. The fact was that he was not paralyzed, but had the use of his legs. With the aid and understanding of members of his family and his wife's family, he kept his true condition concealed from the general public. He made use of such methods as keeping the blinds of the house drawn and the doors locked when he was up and about, or by making use of a wheel chair. He was discovered disguised in women's clothes going to a coal shed in his back yard.

The discovery of the fraud was not made until long after the appeal had been taken from the trial court. The Circuit Court

of Appeals said: "We have here, therefore, a conspiracy by Callicotte and others (1) to prevent his true condition and the history of his case being known; (2) to swear falsely as to his condition and the history of his case; (3) to produce a false condition and fabricate a false history of the case as a basis for testimony by witnesses other than himself. This conspiracy was directed against the defendant, the defendant's witnesses, and certain of the plaintiff's own witnesses, and against the court, and jury. Its purpose was not merely to present a false case for plaintiff, but also to prevent the defendant company from putting in its own case in defense." Judge Booth, who writes the decision, exhaustively analyzes the cases in the federal and state courts bearing upon the question of enjoining the payment of a judgment which has been obtained by fraud and deception, and holds that the facts were sufficient to require the court to enjoin the payment of the judgment.

The situation in this case, assuming the truth of the allegations of the bill and the affidavits in support thereof, is a case of perjury, or a conspiracy to commit perjury. The boy testified falsely as to the condition of his left ear before the accident, as did his witnesses. The undisputed evidence, however, does indicate that he was injured, and, furthermore, that he got a bump on the head and was bleeding from his left ear when he was picked up. One of the issues of the case under the pleadings was the extent of the injury to that ear. All of the evidence which the complainant now brings forward to prove the falsity of the claims of the boy was available at the time of trial.

The insurance company had no right and no reason to depend upon the boy, or his relatives, for evidence to assist them in proving their case, other than what might be disclosed by a medical examination. While they gave the company no assistance in proving its case, they did nothing to suppress any evidence which was available. In the Callicotte Case the plaintiff by his conduct prevented the defendant from ascertaining the facts. He suppressed all of the available evidence there was as to his true condition. He simulated a condition which had no existence in fact.

The fact that evidence is introduced as to the nature and extent of the injuries which the defendant and his insurer, who assumes the defense of the action for him, are unable to rebut, and which they discover too late to avail them anything in the state.

court, gives them no basis for a suit in equity here. If it did, these courts would be constantly retrying without juries cases which had been decided by juries in the state courts against the insured of foreign liability insurance companies.

It is of interest to note the construction which has been placed upon section 9405, G. S. 1923, of the state of Minnesota, which provides that any judgment obtained in a court of record by means of fraud or perjury may be set aside in an action brought for that purpose in the same judicial district within three years after discovery thereof. The uniform construction of that statute has been that: "When a party is apprised of his adversary's claim by the pleadings, is in position to investigate and meet it, is not misled, and is not dependent upon him for proof, an action under the statute will not lie." Saari Bros. v. Puustinen (Minn.) 201 N. W. 434.

In the case of Marcus v. National Council, 134 Minn. 338, 159 N. W. 835, involving the same statute, the court said: "This action is brought under G. S. 1913, § 7910 [now section 9405, G. S. 1923], which gives a right of action to set aside a judgment procured by fraud of the prevailing party. As early as 1889 it was held that when an issue is squarely made in a case, so that each party knows what the other will attempt to prove, and neither has a right or is under any necessity to depend on the other proving the fact to be as he himself claims it, the mere allegation by the defeated party that there was, as to such issue, false or perjured testimony by the successful party or his witnesses, will not bring his case within the meaning of the statute. Hass v. Billings, 42 Minn. 63, 43 N. W. 797." It is obvious that under the state statute, as construed by the Supreme Court of Minnesota, the aggrieved parties here have no remedy, although they could still invoke its aid.

There is nothing in the Callicotte Case or the authorities therein cited which indicates to my mind that a suit in equity to enjoin the collection of a judgment based on fraud or perjury may be maintained, which could not be maintained under the state statute in question. In fact, the rule relating to such cases seems to be substantially the same.

The bill of complaint in this action and the affidavits to support it together do not state facts which would entitle the complainant to the relief prayed for.