**PHILLIPS PETROLEUM CO. et al. v. JENKINS.**
**No. 10859.**

Circuit Court of Appeals, Eighth Circuit.
June 28, 1937.

Rayburn L. Foster, of Bartlesville, Okl. (R. H. Hudson, of Bartlesville, Okl., Marsh & Marsh and Mahony & Yocum, all of El Dorado, Ark., and Franklin E. Kennamer, Jr., of Tulsa, Okl., on the brief), for appellants.

Robert C. Knox, of El Dorado, Ark. (L. B. Smead, of Camden, Ark., and J. V. Spencer, of El Dorado, Ark., on the brief), for appellee.

Before WOODROUGH, THOMAS, and FARIS, Circuit Judges.

WOODROUGH, Circuit Judge.

In June, 1934, Roy O. Jenkins, an employee of the Phillips Petroleum Company residing in Arkansas, sued that company and Joe H. Myers, a locally resident coemployee, in the circuit court of Ouachita county, Ark., for damages for personal injury occasioned by negligence and obtained judgment for $50,000, which was modified on appeal to the Supreme Court of the state in May, 1935, by reducing the amount to $30,000. A further appeal to the Supreme Court of the United States resulted in affirmance of the judgment in that amount. 297 U.S. 629, 56 S.Ct. 611, 80 L. Ed. 943. The petroleum company and the bonding companies which had become liable on supersedeas bonds brought this suit in equity in the federal District Court in May, 1936, to obtain relief from the judgment, claiming, (1) that they were entitled to have Jenkins enjoined from executing his judgment because he had obtained it by the practice of extrinsic fraud, in that he had fraudulently simulated an injury which he had not received and a disability, when he was not disabled at all, but only pretended to be, and in that he had conspired with a doctor who had instructed and helped him so that he was able to and did deceive physicians who examined him and testified in the case, and deceived the court and jury into unjustified belief that he had been seriously injured; and, (2), that they were entitled to be relieved from the judgment under the provisions of the statutes of Arkansas on the ground of newly discovered evidence set out in the bill. The coemployee, Joe H. Myers, who had become a resident of Oklahoma, intervened in the case and joined in the allegations and prayer of the plaintiffs.

On the trial of the equity suit findings of fact and conclusions of law were made favorable to Jenkins and the suit was dismissed. The petroleum company, Joe H. Myers, and the bonding companies, have appealed. The points argued on the appeal under the assignments of error are (1) that the findings of the trial court are against the weight of the evidence; (2) that "the false history related by Jenkins, to examining physicians and their conclusions based thereon, together with his false testimony before the court and jury as to the extent of his injury constituted extrinsic fraud warranting a federal court of equity in enjoining the enforcement of the judgment"; and (3) that "even though the fraud established by the evidence should be deemed intrinsic and not extrinsic, the substantive right to relief against such judgment, created by the statutes of Arkansas, should be applied and enforced in the federal court. * * *"

The findings of the trial court were:

"Finding of Fact No. 1.

"On April 5, 1934, the defendant, R. O. Jenkins, and Intervener Joe H. Myers, while engaged in the performance of their duties as employees of plaintiff Phillips Petroleum Company, were carrying a joint of line pipe, each having one end of said pipe on his shoulder, the defendant Jenkins carrying the front end of said pipe and walking ahead, and intervener Myers carrying the rear end of said pipe and walking

behind. Before they had traversed the required distance, Myers suddenly and without warning shifted his end of the pipe from one shoulder to the other, jerking Jenkins off balance, causing him to fall, and the end of the pipe which he was carrying struck him in the small of his back, actually injuring him—the nature and extent of such injury being one of the issues tried in the State Court. Immediately after said injury Jenkins was taken by another employee to a physician who was in the employ of Phillips Petroleum Company, and said Physician caused an X-ray picture of defendant's spinal column to be made, and for a week or two thereafter treated Jenkins, when his case was transferred to another physician, who was also employed by Phillips Petroleum Company, and who sent Jenkins to a hospital where he was confined under the care of said second physician for some ten days or two weeks, and thereafter for several weeks Jenkins was under the treatment of said second physician.

"Finding of Fact No. 2.

"On June 16, 1934, Jenkins filed suit in the Circuit Court of Ouachita County, Arkansas, against Phillips Petroleum Company and Joe H. Myers, alleging that on account of negligence of Myers he had suffered the following injuries:

"(a) That first and second lumbar vertebrae were separated with attendant severe impact and concussion of the spinal cord in the region of the first and second lumbar vertebrae, and the ligaments in the region of the spinal cord near the first and second lumbar vertebrae were bruised and torn with attendant adhesions, bleeding and swelling; all of which caused severe pressure upon the spinal cord and resulted in Myeletic softening of the lower end of the spinal cord, causing injury and degeneration of the nerves of the spinal cord and the nerves running therefrom, with resulting motor and sensory paresis, loss of sensation in the lower extremities and loss of free locomotion in the legs, back and hips of the plaintiff and causing partial paralysis of the hips, legs and back of the plaintiff of the progressive type which will gradually grow worse until complete paralysis will exist.

"(b) A severe injury to the Sacro Iliac joint with contusions of the Sacro Iliac surfaces, resulting in a traumatic Sacro Iliac Arthritis;

"(c) A severe injury to the pelvic bone; his right pelvic is tilted and the muscles and ligaments of the region thereof are strained, torn and bruised;

"(d) A curvature of the spine;

"(e) A total loss of his sexual functions and powers;

"(f) The bladder and rectal centers of the plaintiff are involved; the control of the plaintiff over the action of his bowels and the passing of his urine are impaired; this condition will progress until plaintiff will completely lose control of the action of his bowels and the passing of urine and will lose complete control of the impulse to urinate or to stool;

"(g) That on account of his said injuries the health of the plaintiff has become greatly impaired, and his nervous system has been damaged and impaired; that all of his injuries are permanent and progressive and will continually grow worse; that on account of his said injuries the plaintiff suffered severe physical pain and mental anguish, and will continue so to suffer for the balance of his lifetime;

"Phillips Petroleum Company in due time filed its separate answer, and among other things denied that Jenkins was injured in any manner and to any extent whatever, and particularly denied that he had received any of the injuries set out in his complaint. Joe H. Myers, thereupon adopted the answer of his co-defendant Phillips Petroleum Company.

"Finding of Fact No. 3.

"On June 6th, 1934, Jenkins was examined by Dr. J. B. Jameson and R. B. Robbins of Camden, Arkansas, and on September 24, 1934, he was examined by Dr. Leslie A. Purifoy of El Dorado, Arkansas. The purpose of said examinations was to enable said physicians to testify in the trial, and each of them did appear in the State Court, and testify as witnesses on behalf of Jenkins. Since said trial in the State Court Dr. Purifoy has died, but both Dr. Jameson and Dr. Robbins testified at the hearing in this Court.

"At the time of said examination by said physicians, the defendant Jenkins gave to each of them a history of his case, and made physical responses to, and answers to questions asked him concerning, certain tests of the reflexes made by said physicians during the course of said examinations.

"An X-ray picture of the spinal column, showing the first and second vertebrae of the lumbar region, was taken by Dr. Jameson, who testified at the trial in the State Court, and also here, that said picture showed a separation between these vertebrae.

"Plaintiffs and intervener have failed to show by a preponderance of the testimony that defendant made any false statements or answers to said physicians, or either of them, or that he could, and did, control his responses to the various tests made upon him, so that said physicians, or either of them, were misled or deceived, and induced to believe that he had suffered an injury which did not exist in fact. On the contrary Dr. Jameson and Dr. Robbins both testified at the hearing in this court, and Dr. Jameson so testified in the trial in the State Court, that disregarding all subjective symptoms and relying solely on the objective symptoms, they could and did reach the conclusion that defendant had suffered an injury to his spinal cord.

"Finding of Fact No. 4.

"On September 26, 1936, (the day before the commencement of the trial in the State Court: The defendant Jenkins, at the request of attorneys for plaintiffs Phillips Petroleum Company and Intervener Joe H. Myers, submitted to an examination by Drs. Fletcher of Hot Springs, Mahony and White of El Dorado, Arkansas (Dr. White being the second physician of Phillips Petroleum Co. who had previously treated Jenkins). Said physicians caused several X-ray pictures to be taken by Dr. Levine and Jenkins was thoroughly examined by the other three physicians. During the course of said examination Jenkins was asked and answered several questions touching the history of his case, and made physical responses to, and answers to questions asked him concerning, certain tests of the reflexes made by said physicians during the course of said examination.

"Plaintiffs and Intervener have failed to show by a preponderance of the testimony:

"(a). That the statements and answers made by Jenkins to said physicians were false;

"(b). That Jenkins could and did so control the physical responses to the tests made, that such responses did not correctly reflect his true reaction to said tests.

"Plaintiffs and Intervener have failed to establish by a preponderance of the testimony that by reason of any false statement made or answer given by Jenkins to said physicians or by reason of any false response which he simulated to any test made upon him by them, they or any of them were caused to arrive at the conclusion that he was, or might be, suffering from any of the injuries as set out in his complaint, but on the contrary the court finds that as a result of said examination said physicians, and each of them, arrived at the conclusion that Jenkins had not suffered any of the injuries set out in his complaint, and said physicians immediately after said examination so reported to the attorneys for plaintiffs and intervener, and appeared as witnesses and so testified before the jury.

"Finding of Fact No. 5.

"The evidence fails to show that either plaintiff Phillips Petroleum Company or intervener Joe H. Myers were prevented by fraud or concealment practiced upon them, their attorneys or witnesses, by Jenkins, or any one for him, from presenting any defense which they, or either of them, may have had to the action in the State Court.

"Finding of Fact No. 6.

"The evidence fails to show that either Jenkins, or any one acting for him, was guilty of extrinsic fraud practiced in the procurement of the judgment of the State Court.

"Finding of Fact No. 7.

"The allegations upon which plaintiff and intervener base their prayer for equitable relief here may be summarized as follows: That Jenkins fraudulently simulated an injury which had no basis in fact, and that he fraudulently concealed his true condition from plaintiff and intervener. The court finds that one of the defenses interposed by the plaintiff and intervener in the State Court was that Jenkins was not in any manner injured, and that he was fraudulently simulating an injury which had no basis in fact. And the court finds that such defense was tried in the State Court.

"Finding of Fact No. 8.

"Plaintiff and intervener have failed to establish by preponderance of the evidence that there was a conspiracy between Jenkins and Dr. Henry as alleged in the Bill of Complaint.

"Finding of Fact No. 9.

"The evidence offered by plaintiffs and intervener in support of the second count of the complaint, which relates to Newly Discovered Evidence, would not be sufficient to support a petition for such relief filed in the State Court under the provisions of section 1316 of Crawford & Moses Digest, for the reasons that such evidence (1) tends only to impeach the testimony of Jenkins (2) relates only to the measure of damages and (3) would not likely change the result.

"Finding of Fact No. 10.

"All issues of fact not specifically covered by Findings of Fact No. 1 to 9 inclusive above are decided in favor of the defendant and against the plaintiffs and intervener."

In our study of the evidence we have been aided by the thorough analysis and discussion at the bar and in the briefs. To set out all of the testimony would be unreasonable and to omit parts would obscure the claims and the arguments upon them. We have reached the conclusion that the trial court has set out the substantial and controlling facts in its findings and that the findings are in conformity with the preponderance of the evidence. In the preparation of the bill in equity the allegations were assimilated closely to the facts which this court found sufficient to justify equitable relief against a state court judgment obtained by fraud in the case of Chicago, Rock Island & Pacific Ry. Co. v. Callicotte (C.C.A.) 267 F. 799, 16 A.L.R. 386. The effort of the plaintiffs on the trial of this case was to make proof that would bring their case within the doctrine laid down in that case. But we think they failed to sustain the burden under the applicable rules of law. Such rules of law which the trial court found applicable to the case and determinative of the insufficiency of the testimony for the plaintiffs were declared by the trial court as follows:

"Conclusion of Law No. 1.

"The acts for which a Court of the United States, sitting in equity, will on account of fraud deprive a party of the benefit of a judgment rendered, between the same parties, by a State Court of competent jurisdiction have relation to frauds, extrinsic or collateral, to the matter tried by the State Court, and not to a fraud in the matter on which the judgment was rendered. Extrinsic fraud operates not upon matters pertaining to the judgment itself, but relates to the manner in which it is procured. Extrinsic fraud is any fraudulent conduct of the successful party which is practiced outside of an actual adversary trial, and which is practiced directly and affirmatively upon the defeated party, or his agents, attorneys or witnesses, whereby such defeated party is prevented from presenting fully and fairly his side of the case.

"Conclusion of Law No. 2.

"Courts of the United States, sitting in equity, will not deprive a party of the benefit of a judgment, rendered between the same parties, by a State Court of competent jurisdiction, on account of intrinsic fraud, such as forged instruments, or perjured testimony, introduced as evidence in the actual adversary trial, or other fraudulent conduct which was practiced during the course of the trial, but which had no effect to mislead the defeated party to his injury after he announced that he was ready to proceed with the trial, and which did not prevent such party from fully presenting his side of the case.

"Conclusion of Law No. 4.

"Jenkins was under no duty to furnish evidence to plaintiff and intervener to weaken his own case. The plaintiff and intervener had no reason to depend upon Jenkins for evidence to assist them in proving their case, other than what might be disclosed by a medical examination.

"Conclusion of Law No. 5.

"A defense cannot be set up in equity which has already been fully and fairly tried at law; and this court cannot by way of review, or otherwise, allow plaintiff and intervener to relitigate issues which have been fully and fairly tried and determined against them. It must appear that the fraud charged really prevented plaintiff and intervener from making a full and fair defense, and, since such fact does not appear, but on the contrary the record discloses that the State Court had before it the same issue of fraud as is presented here, the proof of the ultimate fact, to-wit; that the judgment was obtained by fraud fails."

We find no error in the conclusions of law so stated. Continental Nat. Bank v. Holland Banking Co. (C.C.A.8) 66 F.(2d) 823, 835; Toledo Scale Co. v. Computing Scale Co. (C.C.A.7) 281 F. 488, 494, af-

firmed 261 U.S. 399, 43 S.Ct. 458, 67 L. Ed. 719; Moffett v. Robins, (C.C.A.10) 81 F.(2d) 431; United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Vance v. Burbank, 101 U.S. 514, 519, 25 L.Ed. 929; Estes v. Lucky, 133 Ark. 97, 102, 201 S.W. 815; Bank of Pine Bluff v. Levi, 90 Ark, 166, 118 S.W. 250.

The trial court also made the following declaration of law:

"Conclusion of Law No. 3.

"Courts of the United States, sitting in equity, will not deprive a party of the benefit of a judgment, rendered between the same parties, by a State Court of competent jurisdiction, nor require such party to submit to a new trial, where the bill of complaint and the evidence in support thereof tends only to present a case of 'Newly Discovered Evidence,' unmixed with extrinsic fraud."

On this point the appellants contend the court should have declared the law: "Under the provisions of sections 6290, 6292, 1311 and 1316, Crawford & Moses' Digest of the Statutes of Arkansas, this court has power to and should compel the defendant to submit to a new trial or enjoin the enforcement of the state court judgment, even though the proof shows that the judgment was procured by intrinsic and not extrinsic fraud."

The relevant provisions of the Arkansas statutes, as found in Crawford & Moses' Digest of the Statutes of Arkansas are appended in the footnote.[1]

The position of appellants is that the Arkansas statutes create a substantive right to relief against a judgment obtained by intrinsic, as distinguished from extrinsic fraud, to be secured in an independent action, and, therefore, the same should be applied and enforced in the federal courts.

We think the law was stated with substantial accuracy in the declaration No. 3 of the trial court, supra, and that appellants' contention should not be sustained, because:

(1) The proceedings to obtain a new trial for newly discovered evidence or intrinsic fraud under the Arkansas statutes are not, in any broad or general sense, an independent action, but they are incidental or supplemental proceedings tantamount to a bill of review for newly discovered evidence in an equity case, and the questions that are brought forward for determination arise from the pleadings, proceedings, and adjudication in the former case. 1 Freeman on Judgments (5th Ed.) § 209, p. 405; Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870; Milwaukee & Minn. R. R. Co. v. Soutter, 2 Wall. (69

---

[1] "1311. Causes for. A new trial is a re-examination in the same court of an issue of fact after a verdict by a jury or a decision by the court. The former verdict or decision may be vacated and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of such party: * * *

"Seventh. Newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

"1316. Grounds discovered after term. Where grounds for new trial are discovered after the term at which the verdict or decision was rendered, the application may be made by petition filed with the clerk not later than the second term after the discovery, on which summons shall issue, as on other complaints, requiring the adverse party to appear and answer it on or before the first day of the next term. The application shall stand for hearing at the term to which the summons is returned executed, and shall be summarily decided by the court. The evidence may either be by depositions or by witnesses examined in court. But no

such application shall be made more than three years after the final judgment was rendered. Civil Code, § 375."

"6290. Grounds for vacating or modifying. The court in which a judgment or final order has been rendered or made shall have power, after the expiration of the term, to vacate or modify such judgment or order:

"First. By granting a new trial for the cause, and in the manner prescribed in § 1316. * * *

"Fourth. For fraud practiced by the successful party in the obtaining of the judgment."

"6292. Procedure to vacate or modify. The proceedings to vacate or modify the judgment or order on the grounds mentioned in the fourth, fifth, sixth, seventh and eighth subdivisions of § 6290 shall be by complaint, verified by affidavit, setting forth the judgment or order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On the complaint, a summons shall issue and be served, and other proceedings had as in an action by proceedings at law. Id. § 573."

U.S.) 609, 17 L.Ed. 886; Killion v. Killion, 98 Ark. 15, 135 S.W. 452.

(2) Section 265 of the Judicial Code (28 U.S.C.A. § 379) prohibits the federal courts from enjoining or staying proceedings in any court of a state except in cases where such injunction may be authorized by any law relating to bankruptcy. The prohibition extends not only to the proceedings in a state court up to and including the final judgment, but to the entire proceedings from the commencement of the suit until the execution issued on the judgment or decree. Wayman v. Southard, 10 Wheat. 1, 6 L.Ed. 253; Fenwick Hall Co. v. Old Saybrook (C.C.) 66 F. 389; Leathe v. Thomas (C.C.A.) 97 F. 136; Security Trust Co. v. Union Trust Co. (C.C.) 134 F. 301; Union Pac. R. Co. v. Flynn (C.C.) 180 F. 565; W. E. Stewart Land Co. v. Arthur (C.C.A.) 267 F. 184; Higgins v. California Prune Co., etc., Growers (C.C.A.) 282 F. 550, reversed on other grounds (C.C.A.) 3 F.(2d) 896; Hill v. Martin, 296 U.S. 393, 56 S.Ct. 278, 80 L.Ed. 293. One of the recognized exceptions to the prohibition of this statute is a suit to enjoin a judgment obtained by extrinsic fraud practiced by the successful party on his adversary, preventing the latter from making a full defense. United States v. Throckmorton, 98 U.S. (8 Otto) 61, 25 L.Ed. 93; Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L. Ed. 870; Chicago, R. I. & P. Ry. Co. v. Callicotte, supra; Continental Nat. Bank v. Holland Banking Co., supra; and other exceptions are also recognized. See note 28 U.S.C.A. § 379. But we cannot find any suggestion in any of the reports that a bill for a new trial for newly discovered evidence is one of the exceptions. We think the section precludes the awarding of such relief in the federal courts. See Henrietta Mills v. Rutherford County, 281 U.S. 121, 127, 50 S.Ct. 270, 272, 74 L.Ed. 737; Engelhard v. Shroeder (C.C.A.) 278 F. 341, affirmed 258 U.S. 610, 42 S.Ct. 382, 66 L.Ed. 789.

(3) Strong proof that federal courts have considered themselves without power to grant new trials for newly discovered evidence in cases which have been brought to judgment in state courts is to be found in the meticulous care with which such federal courts have always distinguished between extrinsic and intrinsic fraud. Engelhard v. Shroeder, supra; Luikart v. Farmers' Lumber Co. (C.C.A.10) 38 F.(2d) 588, 589; Bailey v. Willeford (C.C.A.4) 136 F. 382, 385; International Indemnity Co. v. Peterson (D. C.Minn.) 6 F.(2d) 230, 232; Marshall v. Holmes, supra; Barrow v. Hunton, 99 U. S. 80, 25 L.Ed. 407. It is not to be assumed that jurisdiction could be conferred on the federal courts merely by changing a description from "intrinsic fraud" to "newly discovered evidence."

The appellants have relied strongly upon Cowley v. Northern Pac. R. Co., 159 U.S. 569, 16 S.Ct. 127, 130, 40 L.Ed. 263. The federal court was there held to have power to grant relief against a judgment obtained by fraud in the territorial court of Washington Territory, and procedure similar to that provided by the Arkansas statutes was held to be the proper and applicable procedure in the case after it had been transferred to the federal court of the new state of Washington. But it is evident from consideration of the report of the case in (C.C.) 46 F. 325, read in connection with the opinion of the Supreme Court, that the act of Congress which granted statehood to the territory operated, under the circumstances shown, to "transfer" the whole case, that is, the original suit and the proceedings to set aside the judgment for fraud, to the federal court. See 25 United States Statutes at Large 683, § 23. Therefore, the federal court had jurisdiction of the whole case, including the supplemental and incidental proceedings to obtain a new trial, that it would have had if the original suit had been brought in the federal court in the first instance.

We do not find the case to be authority for the doctrine contended for by the appellants. We think, on the contrary, that the opinion made plain the distinction between the power of the federal courts to relieve against state court judgments obtained by extrinsic fraud and against those obtained by intrinsic fraud. The court said: "It was said by Mr. Justice Bradley, in delivering the opinion of the court, that the question presented was whether the proceeding was a separate suit, or a supplementary proceeding so connected with the original suit as to form an incident to it, and substantially a continuation of it. 'If the proceeding is merely tantamount to the common-law process of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review, or an appeal, it would belong to the latter category, and the United States

190

court could not properly entertain jurisdiction of the case."

National Surety Company v. State Bank of Humboldt (C.C.A.) 120 F. 593, 61 L.R.A. 394, and Commissioners of Road Improvement District No. 2. v. St. Louis Southwestern Ry. Co., 257 U.S. 547, 42 S. Ct. 250, 66 L.Ed. 364, were cited and have been considered, but they do not sustain the position of appellants.

We find no error in the proceedings or decree of the district court.

Affirmed.