M. W. ZACK METAL COMPANY, Appellant, *v.* FEDERAL INSURANCE COMPANY, Respondent.

First Department, June 14, 1966.

*Anthony B. Cataldo* for appellant.

*Joseph J. Magrath, III,* of counsel (*Bigham, Englar, Jones & Houston,* attorneys), for respondent.

Stevens, J. This is an appeal by plaintiff from a judgment entered January 3, 1966 in its favor in the total sum of $7,170.15. Plaintiff appeals also from an order entered April 14, 1964 which denied its motion to set aside the verdict and direct judgment for plaintiff in the sum of $70,000 or to grant a new trial restricted to the issue of damages only.

This is an action under a valued policy of insurance for damage to a quantity of steel purchased by the plaintiff for resale to a third party. The steel was made in Austria and according to the testimony at the trial it was surveyed by two men on the dock at Antwerp, Belgium, and found to be in good condition. The goods, consisting of 93 coils of rolled steel, were found to be damaged when discharged from the vessel which transported the steel from Antwerp to New York. The extent of the damage and whether the damage was a covered risk is the point of contention between the parties. The policy insured the shipment " against all risks of physical loss or damage from any external cause * * * excluding rust, oxidation and corrosion unless caused by stranding, sinking, burning or collision of the vessel."

The goods were discharged in the Foreign Trade Zone February 16, 1960. The warehouse receipt given at that time stated the shipment was " in apparent good order except " [the foregoing being printed and followed by these typewritten words] " All coils rusty and more or less dented. Straps broken, numbers illegible. 30% straps missing. 7 coils kept separate in bad shape. Need reconditioning."

After the discharge of the shipment the plaintiff's expected buyer refused to accept the goods allegedly because of their damaged condition. Notice was immediately given to the insurer

which retained a firm of surveyors, Albert R. Lee and Company, Inc., to survey the steel. One Dauncey was sent by Lee and Company to survey the goods for the defendant. The parties were unable to agree upon the extent of the damage or the cause thereof. According to the testimony on plaintiff's behalf, after the intended sale fell through Dauncey suggested that plaintiff attempt to sell the steel as prime steel. Such a sale could not be consummated. By letter dated March 17, 1960 addressed to defendant, plaintiff abandoned the steel to defendant as insurer. By letter dated March 28, 1960 Dauncey wrote plaintiff: "We note from a communication from Underwriters, that you have stated your desire to abandon the above-mentioned 93 coils sheet steel. We suggest, without prejudice, that you obtain bids for this steel as is/where is, advising us of these bids before any disposition of the steel has been made." Thereafter plaintiff sought and eventually obtained a bid for such steel. Dauncey was kept informed of the negotiations. The steel was sold in May, 1960 to a foreign buyer. The sale price was considerably less than the price paid by plaintiff and also less than the face amount of the valued policy. At the trial plaintiff offered evidence of the foregoing and defendant offered evidence in contradiction as to the cause and extent of the damage. Defendant's chief contention seemed to be that the damage was caused by rust, an excluded risk under the policy. The jury awarded plaintiff the sum of $5,270.

Plaintiff immediately moved to set aside the verdict and this motion was denied. From the judgment thereafter entered plaintiff takes this appeal as well as from the order denying its motion to set aside the verdict or for a new trial. In our view a new trial is warranted because under no version of the facts can the verdict as to amount be sustained, and because the court's charge as to damages was unclear and confusing so that the jury was not fully apprized of the standard to be applied in determining damages. Many extraneous matters were introduced which possibly will be avoided on the new trial.

Since this was only a partial loss and the suit was on a valued policy which covered the goods in transit and until the discharge of such goods, the proportion of the damage to the goods will determine the loss suffered. That is because the assurer and the assured have agreed in advance on the total value of the shipment in question. Thus the cost of the goods to plaintiff or the true worth of the property is of no consequence in the absence of fraud, concealment or some factor which would vitiate the contract. Nor does market fluctuation serve as a determinant. The contention of defendant that there was a sharp

drop in the market price of steel which caused plaintiff's buyer to reject the shipment, even, if true, does not determine the extent of loss here if there was covered damage to the goods. '' The purpose of a stipulation for value in the policy is to settle, as between the parties, the sum the goods *are to be taken to be worth*; the only way to give effect to this stipulation, in the case of partial loss, is to arrive at a fraction or proportion of damage, without recourse to the policy value, and *then* to apply that fraction to the policy value to determine what the loss *is to be taken to be,* regardless of errors in valuation or fluctuation in the market '' (Gilmore & Black, The Law of Admiralty, p. 83; italics added). The formula may be expressed as follows: actual damage equals sound worth minus damaged worth of the goods. Using actual damage worth as the numerator and actual sound worth as the denominator we obtain the proportion of damage. Multiplying the proportion by the valuation equals the extent of the loss. The actual sound worth of the goods if they had arrived undamaged may be estimated by reference to the market, while the actual worth damaged may be ascertained, usually by public sale, or by what they actually bring. (See Gilmore & Black, The Law of Admiralty, pp. 82, 84; cf. *Berns & Coppstein* v. *Orion Ins. Co.,* 170 F. Supp. 707, 715–716.)

The damage to the steel would be fixed as of the time of discharge. Had the goods been sold immediately upon discharge for the best price possible, it would then have been necessary to determine what such goods would have been worth in the same market if undamaged. Of course if any damage occurred thereafter as a result of delay or affirmative acts by the defendant, such loss may also be included. The difference between the undamaged value and the proceeds of the sale would give the ratio of the deterioration. Since, however, the goods were not so disposed of and since the parties could not agree upon the extent of the damages, the foregoing formula should be utilized. Other points raised by plaintiff on this appeal are not discussed at length because of our disposition in ordering a new trial.

Judgment appealed from should be reversed on the law, and a new trial ordered, without costs or disbursements to either party. Costs are not awarded because the briefs were of no assistance to the court. The appeal from the order denying the motion to set aside the verdict should be dismissed as academic in light of our disposition of the main appeal.

BREITEL, J. P., RABIN, McNALLY and STEUER, JJ., concur.

(Appeal No. 10402.) Judgment unanimously reversed, upon the law, and a new trial ordered, without costs or disbursements to either party.

(Appeal No. 10403.) Appeal from order, entered on April 14, 1964, unanimously dismissed as academic in view of the decision of this court on Appeal No. 10402, decided herewith.