**M. W. ZACK METAL CO.,**
**Plaintiff-Appellant-Cross-Appellee,**

v.

**INTERNATIONAL NAVIGATION COR-**
**PORATION OF MONROVIA, Jansen &**
**Co., Contam Linie, Hans H. Jansen, Jur-**
**gen K. Krafft, Newcastle Protection &**
**Indemnity Association, The London**
**Steamship Owner's Mutual Insurance**
**Association, Ltd., Defendants-Appellees.**

**Newcastle Protection & Indemnity Associ-**
**ation and The London Steamship Own-**
**er's Insurance Association Limited, De-**
**fendants-Appellees-Cross-Appellants.**

**Nos. 473, 580, Dockets 80–7003, 81–7353.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 25, 1982.

Decided April 12, 1982.

As Amended May 7, 1982.

Anthony B. Cataldo, New York City, for plaintiff-appellant-cross-appellee.

Donald B. Allen, New York City (Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, of counsel), for defendants-appellees-cross-appellants.

Robert W. Mullen, Dickerson, Reilly & Mullen, New York City, for defendants-appellees.

Before MESKILL and CARDAMONE, Circuit Judges, and HOLDEN, District Judge.*

MESKILL, Circuit Judge:

M. W. Zack Metal Co. ("Zack") appeals from a judgment entered by the United States District Court for the Southern District of New York, Robert W. Sweet, *Judge*, dismissing its complaint, which sought recovery for cargo damage and for fraud. Newcastle Protection & Indemnity Association and the London Steamship Owner's Mutual Insurance Association Limited (the "Insurers") cross-appeal from Judge Sweet's dismissal of their counterclaim for

* Honorable James S. Holden, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

malicious prosecution and abuse of process. For the reasons set forth below, we affirm the district court's decision in all respects.

## BACKGROUND

Zack comes before this Court with a matter that was first litigated over twenty-two years ago and that has consumed an inordinate amount of the resources of courts in this country and abroad. The facts and procedural history of the dispute are as follows.

On January 18, 1960, Zack purchased ninety-three coils of Austrian hot rolled steel which it had contracted to sell in the United States to Dearborn Steel Sales, Inc. The steel was shipped under a clean bill of lading from Belgium to New York aboard the S.S. SEVERN RIVER, a vessel owned by International Navigation Corporation of Monrovia ("International"), a Liberian corporation, and under charter to Jansen & Co. (the "Charterer"), a German partnership. The steel was damaged in transit and, after Dearborn Steel refused to accept shipment, was sold by Zack to a German company for approximately one-half of Zack's cost.[1]

On February 11, 1961, Zack commenced suit against the SEVERN RIVER and the Charterer in the United States District Court for the Southern District of New York seeking to recover $80,000 in damages, the difference between the market value of the steel in good condition and its salvage value less resale expenses. That action was dismissed without prejudice for failure to prosecute, service having never been effected on any of the defendants. On January 27, 1961, Zack had sent a letter to the Charterer's agent in New York, Oceana of Canada Ltd., requesting an extension until May 15, 1961 of the limitations period under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1303(6) (1976).[2] Oceana granted Zack's request.

1. The damaged steel was sold for $42,977.98. Zack claimed that its cost of resale amounted to $12,833.58.

2. Clause 1 of the bill of lading provided that the

Three days before the extension was due to expire, Zack filed identical actions for the cargo loss in the United States District Court for the District of New Jersey and the United States District Court for the Eastern District of New York. The following day, Zack filed a similar action in the County Court for Commercial Affairs in Hamburg, Germany. Both district court cases were dismissed for failure to prosecute.

While the German case was pending, Zack brought an action in New York State Supreme Court against its cargo underwriter, Federal Insurance Company ("Federal") to recover for the cargo loss. On March 14, 1968, after two trials and two appeals, and during a third trial, a settlement was reached under which Zack received $40,000 on the cargo damage claim plus $19,453 in interest.[3] The settlement also permitted Zack to continue the action in Germany provided that Federal received fifty-five percent of any net recovery.

In 1970 the Insurers, indemnity insurers of the Charterer and International, purchased Federal's interest in the outcome of the German litigation. Zack then commenced an action against the Insurers charging them with fraud in purchasing Federal's interest. Zack represents that this action is still pending.

On December 7, 1971, after ten years of litigation, the German trial court found the Charterer, its partners and International liable to Zack for $64,000 plus interest and costs.[4] International's liability was limited to execution upon the SEVERN RIVER, which, unknown to the German court, had foundered at sea some three years earlier.

Later in 1971, Newcastle, in an effort to forestall execution on the judgment pending the outcome of an appeal, signed a guarantee of satisfaction of payment to Zack to become operative upon either the entry of a final decision by the German courts or upon a settlement agreement. During the pendency of the appellate proceedings in Germany, Zack filed suit in the United States District Court for the Eastern District of Virginia seeking to recover against International by attaching one of its vessels, the VIRTUS, in Norfolk. Zack asserted that the attachment action was proper because the SEVERN RIVER had run aground. The attachment order was eventually vacated and the suit dismissed. On appeal, the Fourth Circuit affirmed the dismissal, holding that because the German judgment was "in rem" against the SEVERN RIVER, it "furnish[ed] no basis for the assertion of an in personam liability of the owner or the attachment of any other vessel owned by International." *M. W. Zack Metal Co. v. International Navigation Corp.*, 510 F.2d 451, 452–53 (4th Cir.), *cert. denied*, 423 U.S. 835, 96 S.Ct. 60, 46 L.Ed.2d 53 (1975).

On January 9, 1975, the Hanseatic Provincial Court of Appeals in Germany dismissed Zack's claim against International, finding that the written extension of time to sue from February 16 to May 15, 1961 given to Zack by the Charterer's agent in New York did not bind International, causing Zack's claim against the shipowner to be time-barred under COGSA, 46 U.S.C. § 1303(6), and applicable German law. In addition, while the court found that the Charterer and its partners were liable for the cargo damage, it reduced their liability to $33,000 plus interest and costs.[5] Thereafter, the Insurers posted a bond to guarantee satisfaction of payment of the Charter-

---

shipment was subject to the Carriage of Goods by Sea Act.

**3.** The two opinions on appeal, in the action captioned *M. W. Zack Metal Co. v. Federal Insurance Co.*, are reported at 26 A.D.2d 54, 271 N.Y.S.2d 1 (1st Dep't 1966) and 28 A.D.2d 1109, 284 N.Y.S.2d 582 (1st Dep't 1967).

**4.** Clause 19 of the bill of lading limited loss to $500 per package or per customary freight unit.

Of course COGSA's package limitation, 46 U.S.C. § 1304(5), would apply regardless of this clause. *See* 46 U.S.C. § 1312. The German trial court computed damages based upon $500 per unit of 1,000 kilograms.

**5.** Damages were computed on the basis of $500 per damaged coil. The court determined that 66 coils had been damaged in transit.

er's liability and a lien to protect its interest in Zack's recovery. Zack has yet to execute on the judgment of the German appeals court.

In 1976, Zack moved in the United States District Court for the District of New Jersey to have its claim against the SEVERN RIVER restored to the docket. The district court denied the motion and the Third Circuit affirmed. *M. W. Zack Metal Co. v. S.S. Severn River*, No. 386–61 (D.N.J. Oct. 19, 1976), *aff'd by order*, 577 F.2d 727 (3d Cir.), *cert. denied*, 439 U.S. 894, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978).

Zack filed the instant action in the United States District Court for the Southern District of New York on July 31, 1978 alleging five causes of action. The first three prayed for recovery for cargo damage against International and the Charterer, the Charterer and Newcastle, and International and London, respectively. The fourth pleaded for collection upon Newcastle's written guarantee of satisfaction. The final cause of action sought damages against the Insurers for fraud. Zack alleged that International and the Charterer, through attorneys retained by the Insurers, defrauded the courts which had rendered decisions on Zack's cargo damage claims by misstating the law and withholding operative facts. The defendants counterclaimed, charging Zack with malicious prosecution and abuse of process for failing to reduce its claim to judgment in the German courts and for instituting the subsequent actions in the United States.

The district court, on defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6), dismissed all of Zack's claims except that which sought recovery on the Newcastle guarantee. Judge Sweet found that the cargo damage claims were barred by the one year limitations period in COGSA, 46 U.S.C. § 1303(6), having been brought eighteen years after delivery of the goods. Judge Sweet found that each of Zack's claims for fraud could be presented only in the court where the fraud was allegedly perpetrated. Alternatively, the court held that an independent action for fraud will not lie where,

as here, the party alleging fraud had an opportunity to raise these claims in prior proceedings, or where the allegations involve intrinsic fraud.

Following a two-day trial, the district court also dismissed Zack's claim on the Newcastle guarantee without prejudice, finding that Zack had failed to prove that the determination of the Hanseatic Provincial Court in Germany was a "final decision" within the meaning of the guarantee. In addition, the court dismissed defendants' counterclaim holding that Zack's counsel acted in good faith and, therefore, did not possess the required scienter for malicious prosecution or abuse of process.

## DISCUSSION

Zack alleges on appeal that its claims for cargo damage are not time-barred; that it presented sufficient evidence that the Charterer and Newcastle are presently obligated under the Newcastle guarantee to pay Zack $110,000 in damages; and that it may maintain an independent action in federal district court for fraud committed by the Insurers in prior litigation concerning the cargo damage claim. The Insurers contend that the district court erred in dismissing their malicious prosecution and abuse of process counterclaims and in failing to dismiss Zack's claim on the Newcastle guarantee with prejudice.

Zack first contends that the district court erred in dismissing as time-barred its claims for recovery for cargo damage. The pertinent section of COGSA provides that "the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods or the date when the goods should have been delivered." 46 U.S.C. § 1303(6). The complaint in this action was filed eighteen years after the SEVERN RIVER arrived in New York with the damaged goods. Zack asserts, however, that it complied with COGSA's statute of limitations by bringing suit in district court in February 1961. This claim is frivolous. The mere filing of a suit by Zack within the limitations period did not forever toll COG-

SA's statute of limitations. Because this suit was not brought within the one year period, Zack is barred from raising these cargo damage claims. *See Instituto Cubano De Estabilizacion Del Azucar v. T/V Golden West*, 246 F.2d 802, 804 (2d Cir.), *cert. denied*, 355 U.S. 884, 78 S.Ct. 152, 2 L.Ed.2d 114 (1957); *Badhwar v. Colorado Fuel & Iron Corp.*, 245 F.2d 903, 907 (2d Cir.), *cert. denied*, 355 U.S. 862, 78 S.Ct. 95, 2 L.Ed.2d 68 (1957); *Joo Seng Hong Kong Co. v. S.S. Unibulkfir*, 493 F.Supp. 35, 39 (S.D.N.Y.1980).

■ Zack next alleges that the district court erred in dismissing its claim against the Insurers for fraud allegedly perpetrated on the various courts which had rendered decisions on its cargo damage claim. The district court characterized this claim as an independent action for fraud under the saving clause of Fed.R.Civ.P. 60(b).[6] Zack's allegations that Insurers' counsel perpetrated fraud upon the various courts arguably fits within the saving clause and is not time-barred. *See generally Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir.), *cert. denied*, 409 U.S. 883, 93 S.Ct. 173, 34 L.Ed.2d 139 (1972). However, we agree with the district court that Zack had an opportunity to raise these fraud claims in the courts in which they occurred and, therefore, cannot maintain this independent action for fraud.

■ An independent action for fraud may not be entertained if "there was an opportunity to have the ground now relied upon to set aside the judgment fully litigat-ed in the original action." *Serzysko v. Chase Manhattan Bank*, 461 F.2d at 702 n.2. *See Marshall v. Holmes*, 141 U.S. 589, 596, 12 S.Ct. 62, 64, 35 L.Ed. 870 (1891). Here, Zack had prior opportunities to raise its fraud claims. For example, Zack alleges that the Insurers fraudulently concealed from the German trial court their knowledge that the SEVERN RIVER had run aground. Zack has had ample opportunity to raise this claim before the German appeals court. Further, Zack actually raised this argument, though unsuccessfully, in the United States District Court for the District of Virginia in its attachment action against the VIRTUS. Zack also had a chance to raise this claim in its appeal to the Fourth Circuit. Likewise, Zack had the opportunity in both German courts and did try to prove there that the extension of time to sue granted by the Charterer's agent in New York also bound the shipowner. Its claim that the Insurers failed to disclose to it and to the courts facts which indicated that COGSA's time-bar covered International, even if true, "does not add up to 'fraud upon the court' for purposes of vacating a judgment under Rule 60(b)." *Kerwit Medical Products, Inc. v. N. & H. Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir. 1980). *See H. K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1118 (6th Cir. 1976); *Kupferman v. Consolidated Research & Manufacturing Corp.*, 459 F.2d 1072, 1080–81 (2d Cir. 1972). Further, we see no reason why the documents that Zack presented below in support of this claim

---

**6.** Fed.R.Civ.P. 60(b) provides in part:

   On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judg-ment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court.* (emphasis added).

could not have been presented in the prior proceedings. *See Konigsberg v. Security National Bank,* 66 F.R.D. 439, 442–43 (S.D. N.Y.1975).

Having found that the district court did not err in dismissing Zack's independent action for fraud because Zack had an opportunity to raise these claims in prior proceedings, we need not determine whether the claim is also invalid because each allegation of fraud is intrinsic to these other proceedings. *See United States v. Throckmorton,* 98 U.S. 61, 68, 25 L.Ed. 93 (1878); 7 J. Moore Federal Practice ¶ 60.37[1] (2d ed. 1979).

■ Finally, Zack contends that the district court erred in dismissing without prejudice its claim for $110,000 from the Insurers under the terms of the Newcastle guarantee.[7] The district court, although recognizing that "some money is owed by the defendants to plaintiff", dismissed this claim because Zack had failed to establish "the entry of or the amount of a final judgment in the German courts." Zack asserts that it presented sufficient evidence below, specifically the Newcastle guarantee and a translated copy of the decision of the Hanseatic Provincial Court in Germany, to establish a present right to recover under the guarantee. We disagree. Zack's evidence established only that the Hanseatic Provincial Court had assessed damages of $33,000 against the Charterer. Zack presented no evidence that an accounting of costs and interest had ever been made by the German appeals court. Accordingly, we agree with the district court that Zack has failed to prove that a "final decision" for purposes of the guarantee has been entered in Germany.[8]

■ The Insurers cross-appeal from a dismissal of their counterclaims charging abuse of process and malicious prosecution

by Zack in failing to reduce the decision of the Hanseatic Provincial Court to judgment and in instituting this and other suits. The district court found that while Zack's counsel is "incompetent," he acted in good faith and therefore did not possess the necessary scienter to be held liable. The Insurers' sole argument is that anyone who filed so many suits over this one simple damage claim must, as a matter of law, have acted in bad faith. We do not approve of the scatter shot approach taken by Zack's counsel over the last twenty-two years in seeking to recover for the cargo loss. We do not know, however, whether it should be attributed to incompetence or bad faith. Therefore we hold that the district court's finding that Zack's counsel acted in good faith was not clearly erroneous. Fed.R. Civ.P. 52(a).

Affirmed. Costs to the defendants-appellees.

CARDAMONE, Circuit Judge (concurring in part, dissenting in part).

The majority votes to affirm the dismissal of plaintiff's first, second and third causes of actions and to affirm the dismissal of defendant's counterclaim. I concur in those affirmances. However, the majority also votes to affirm the dismissal of plaintiff's fourth and fifth causes of action. From those dispositions I respectfully dissent and vote to reverse and remand the fourth cause of action and to remand for trial the fifth cause of action which alleges fraud on the court.

Turning first to plaintiff's fourth cause of action, Zack obtained a "final decision" sufficient to activate Newcastle's liability under the terms of its written guarantee. That guarantee stated: "The undersigned company herewith guarantees to pay upon first request the agreed sum, plus interest

---

7. The guarantee stated:

> The undersigned company herewith guarantees to pay upon first request the agreed sum, plus interest and costs, in the amount to which the plaintiff is entitled pursuant to a final decision of the German courts or on basis of a settlement agreement.

App. at 612.

8. On appeal, the Insurers contend that the district court should have dismissed this cause of action "with prejudice." However, if an accounting of costs and interest is made by the German appeals court, Zack would presumably be entitled to recover on the guarantee.

and costs in the amount to which the plaintiff is entitled pursuant to a final decision of the German courts or on basis of a settlement agreement." Appellant's Appendix at 612. In my view the condition of the guarantee has been met and plaintiff is entitled to its benefit.

The majority does not dispute the finality of the German court judgment. It simply holds that since plaintiff has presented no evidence of an accounting of costs and interest there is a failure to prove that a "final decision" has been entered.

Concededly it is possible to construe the guarantee as requiring that the "final decision" include "interest and costs" as determined by the German ·courts because the reference to that court follows that language. It may, on the other hand, be understood that Newcastle guaranteed to pay the "agreed sum, plus interest" when determined by a "final decision" of the German courts and guaranteed to pay Zack its "costs" when they are finally determined. Interest was fixed in the German judgment at 5% per annum from February 10, 1961. Judicial and extrajudicial costs are ordinarily computed later under German law and are presently in litigation in Germany. Nothing in the guarantee requires that there be a final decision as to costs prior to enforcing the guarantee on the agreed sum plus interest. At most there is an ambiguity in the guarantee which, of course, must be construed against defendant Newcastle, its drafter, in favor of plaintiff, its beneficiary.

Once the Hanseatic Provincial Court of Appeals in Germany handed down its 60-page decision awarding plaintiff $33,000 plus interest, plaintiff had a right to bring suit on the guarantee in the United States District Court to enforce it. The German court had jurisdiction over the parties and subject matter. Its final judgment, unless tainted by fraud or barred by the rules of comity, is entitled to full credit and effect. *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). A final decision of a German court, under the rules of comity, should be enforced in the courts of the United States.

Further, this case should be returned to the district court for trial on the independent equitable action for fraud on the court asserted in plaintiff's fifth cause of action. Nothing corrupts the administration of justice so much as a deliberate fraud on a court. Its odiousness, undissipated by the passage of time, lingers like a miasma. It is alleged that we have such a case before us. While the affirmance by the majority of the trial court's dismissal will end this case, it will not—if the allegations of plaintiff's complaint are true—remedy the damaging effects of a claim of fraud now buried in the darkness of a dismissal.

Plaintiff's fifth cause of action asserts an independent equitable action for fraud practiced on courts in the United States and Germany commencing in 1960. The action was instituted in the Southern District of New York on June 31, 1978. The district court and the majority relying upon *United States v. Throckmorton,* 98 U.S. 61, 25 L.Ed. 93 (1878), held that plaintiff's fifth cause of action alleging fraud upon the court, which is characterized as essentially a collateral attack on the previously rendered decision, must be made in the various courts which were allegedly defrauded. Decisions of the Supreme Court since *Throckmorton* was decided in 1878 indicate that the rationale of that case is no longer persuasive. In *Throckmorton* the Supreme Court used *res judicata* as the legal device to defeat an action based on an old fraud practiced on a court. The rationale upon which the decision was based appears to be the Court's view that suits may be immortal, but men are not. *Id.* 69. Thirteen years later the Supreme Court in *Marshall v. Holmes,* 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), permitted an equitable action to be filed where it was against conscience to permit a judgment obtained by claimed fraud to be executed. This time the Court stated that a court, while not sitting in review, should scrutinize the conduct of the parties in a new proceeding to determine if one used fraud to obtain a judgment. If so, the court will deprive him of the benefit of that

judgment and any inequitable advantage gained. *Id.* at 599, 12 S.Ct. at 65. The view that "truth is more important than the trouble it takes to get it," set forth in *Publicker v. Shallcross,* 106 F.2d 949, 952 (3rd Cir. 1939) is consistent with *Marshall,* which *Publicker* cites at 951.

These two Supreme Court cases afforded ample latitude to lower courts for over 50 years to decide equitable causes of alleged fraud on the courts in whatever way their own predilections led them. More recently the Supreme Court decided *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). In that case the trial in which the alleged fraud occurred took place in 1929, but the fraud was not fully brought to light until 1941. The Supreme Court said, in discussing the independent equitable action of fraud on the court, that "equitable procedure has always been characterized by flexibility which enables it to meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations." *Id.* at 248, 64 S.Ct. at 1002. Based upon this historical progression, I conclude that the harsh rule of *Throckmorton* is not the current view of the Supreme Court.

Thus, it is now established that this type of action should be governed by flexibility to afford necessary relief. The district court in granting summary judgment dismissing this cause of action did not examine the facts, but merely concluded that plaintiff was in the wrong forum. However, its power to entertain this action is not limited where there is a claim of fraud upon a court. Fed.R.Civ.P. 60(b). In this case the fraud should have been explored at trial, particularly since on a motion to dismiss all of the plaintiff's allegations of fraud are deemed to be true.

The majority depicts plaintiff as bringing a multitude of vexatious suits. However, Newcastle's behavior from the outset of this saga over 20 years reveals a callous disregard for the truth. For example, it led the District Court in Hamburg to exercise *in rem* jurisdiction over a ship the court was told was sailing *on* the high seas when in fact Newcastle knew that the SEVERN RIVER was *under* the high seas—it had sunk. Its orchestrated tactics—extending even to buying the subrogation rights of Zack's American insurer on the damaged cargo claim and using it as a basis to slap a lien on the German judgment to prevent Zack from executing on it, and then coolly arguing that Zack did not have a "final decision" from the German court because it had not entered judgment and executed on it—have frustrated plaintiff at each and every turn. In my view plaintiff is entitled on the law to have its day in court.