■ MR. GALVANIZED, INC., Appellant, v B. S. LIVINGSTON & Co., INC., et al., Defendants, and ROYAL GLOBE INSURANCE CO., Respondent.—In an action, *inter alia,* to recover damages for breach of an insurance contract, plaintiff appeals, as limited by its brief, from so much of an order of the Supreme Court, Nassau County (Meade, J.), dated November 23, 1984, as denied that branch of plaintiff's motion which sought partial summary judgment on the issue of damages against defendant Royal Globe Insurance Company (Royal).

Order reversed, insofar as appealed from, on the law, with costs, that branch of plaintiff's motion which sought partial summary judgment against defendant Royal on the issue of damages granted, partial summary judgment granted against Royal in the principal sum of $160,711.01 (33.75% of the $476,180.78 stated value in Royal's subject valued insurance policy), action against Royal severed, and matter remitted to Special Term for entry of an appropriate judgment.

In August 1977, plaintiff arranged the purchase of a quantity of coils of galvanized steel manufactured in Korea. The steel was transported to the United States in two vessels, the *S. S. Furia* and the *S. S. Shin Ming.* When the *S. S. Shin Ming* shipment was unloaded in the port of Philadelphia in

December 1977, many of the coils were found to be damaged by a condition known as white rust.

The *S. S. Shin Ming* shipment was insured under stated value cargo insurance policies for a total of $1,735,000. The policies were issued by defendant Ankuk Fire & Marine Insurance Co., Ltd. ($1,258,819.22) as primary insurer and by Royal ($476,180.78) as increased value insurer.

To determine the extent of the damage, inspections of a selected quantity of the steel were made by surveyors designated by the primary insurer Ankuk, a surveyer designated by Royal, and surveyors designated by other parties in interest. It was the consensus of the Ankuk and Royal surveyors that based on their sampling, 45% of the shipment had sustained damage to the extent of 75% of sound market value, an over-all 33.75% loss on the shipment. However, Ankuk and Royal refused to accept their liability for this damage, and on April 20, 1978 plaintiff conducted a salvage sale at which only three bids were received and plaintiff rejected the bids and purchased the shipment itself.

Thereafter, plaintiff instituted this suit against Ankuk and Royal (and other parties). Plaintiff then obtained partial summary judgment on the issue of liability against Ankuk and Royal. The orders were affirmed on appeal *(Mr. Galvanized v Livingston & Co.,* 96 AD2d 765; *Mr. Galvanized v Livingston & Co.,* 103 AD2d 1050).

Subsequently, plaintiff made the subject motion for partial summary judgment against Ankuk and Royal on the issue of damages, based on plaintiff's contention that since there is no dispute that the insurance company surveyors fixed the over-all loss of 33.75%, there is no reason why summary judgment should not be granted for that minimum amount at this time —i.e., for 33.75% of the values stated in the policies—with plaintiff's claim for additional damages (based on the bids received at the salvage sale) to await trial *(see, Miller v Nationwide Mut. Fire Ins. Co.,* 100 AD2d 727).

At about the time plaintiff made the subject motion, Ankuk settled, and the motion against that defendant was then withdrawn.

Although Royal's assistant secretary concedes that "[i]t is the custom and practice of the marine insurance industry" for the increased value insurer (here Royal) to "follow the lead of the primary cargo insurer" (here Ankuk) in considering any claim presented by the insured under the respective policies, Royal opposed plaintiff's subject motion. The thrust of Royal's

opposition was that notwithstanding the surveyors' estimate of 33.75% over-all damages, "there is evidence in this case demonstrating that plaintiff's actual loss, if any, was far less than the surveyors' estimate", that the "purported [April 20, 1978] 'salvage sale' was nothing more than a sham", and that there is "solid evidence in the form of plaintiff's sales both before and after April 20, 1978 to demonstrate that, in fact, plaintiff reaped handsome profits rather than sustained any loss on account of the alleged damages".

In order to overcome its surveyor's findings, Royal was required to adduce evidence through the affidavit of an expert as to the sound and damaged worth of the steel in issue. Royal's opposition papers do not contain any affidavit from a damage surveyor or expert, or even an averment of any specific proportion of loss less than 33.75%.

Royal's opposition evidence consists of (1) facts purporting to show that the salvage sale (the basis of plaintiff's claim of loss of "closer to 73% then to the 33.75% found by defendants' surveyors") was a sham; and (2) a recitation (based principally on that which plaintiff's attorney avers is "a handful of selected sales invoices which it has chosen out of many hundreds * * * representing the sale of the steel in question * * * after the salvage sale") of sales prices allegedly realized by plaintiff for certain lots of the steel sold between the *S. S. Shin Ming's* arrival in Philadelphia in December 1977, and April 20, 1978 and after April 20, 1978.

This attempt by Royal to impeach or raise a triable issue of fact with respect to the surveyors' 33.75% over-all damage estimate fails, as a matter of law, because Royal has presented no evidence of what the steel was worth undamaged on the market at the time of the sales, and has presented no evidence of the totals realized on the sales of the subject steel, nor any evidence of a proportion of damage other than 33.75% to be applied to the stated values *(see, Zack Metal Co. v Federal Ins. Co.,* 26 AD2d 54, *after retrial* 28 AD2d 1109).

Accordingly, plaintiff is now entitled to partial summary judgment against Royal on the issue of damages, to the extent of 33.75% of the $476,180.78 value stated in Royal's policy, plus interest *(see, Miller v Nationwide Mut. Fire Ins. Co., supra).* Lazer, J. P., O'Connor, Niehoff and Kooper, JJ., concur.